ANTHONY STAVROS, Plaintiff-Appellant, v. RONALD MARRESE, Defendant-Appellee.

First District (4th Division)   No. 1—00—2706

Opinion filed June 28, 2001.

Joseph L. Planera & Associates, of Chicago Heights (John P. Brattoli, of counsel), for appellant.

Querrey & Harrow, Ltd., of Chicago (Kelli Borden, David E. Neumeister, and Dennis A. Marks, of counsel), for appellee.

JUSTICE BARTH delivered the opinion of the court:

This appeal arises from the trial court's grant of defendant Ronald Marrese's motion to dismiss. Plaintiff, Anthony Stavros, brought the underlying action for defamation, alleging that a letter written by defendant and sent to plaintiff's employer contained a wrongful and malicious accusation that plaintiff committed extortion in connection with the issuance of a construction permit. The trial court granted defendant's motion to dismiss pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1998)) (the Code), finding, as a matter of law, that defendant wrote the letter under a qualified privilege and thus the statements contained therein are not actionable. We now consider: (1) whether a qualified privilege attached to the circumstances under which defendant wrote the letter and sent it to plaintiff's employer; and (2) whether, if such a privilege attached, it may have been abused by defendant.

## Factual Background

Plaintiff is employed by the Village of Wheeling (the Village) as an engineering inspector. Among other duties, he is responsible for

inspecting plans for construction projects that take place in the Village. If those plans indicate that the projects will be carried out in compliance with the Village's regulations, plaintiff issues the necessary permits.

Plaintiff first met defendant on July 27, 1998. Earlier that day, defendant had gone to the village hall and applied for a construction permit, which would authorize him to remove an asphalt driveway on property he owned and to replace it with one of concrete. Our review of the record indicates that the property is a parking lot used by tenants of an adjacent apartment building. Pursuant to the permit application, plaintiff visited defendant's property and conducted an inspection of the driveway and plans. Plaintiff informed defendant that no permit would issue unless defendant removed a section of asphalt that encroached on his neighbor's property. Plaintiff instructed defendant to secure permission from his neighbor to remove the asphalt and told him that the permit would issue thereafter. Plaintiff then drove away.

Within an hour of plaintiff's departure, defendant called his neighbor, Mr. Miller, and asked for permission to remove the asphalt from his property. According to defendant, Mr. Miller was reluctant, but ultimately gave his assent. Defendant telephoned plaintiff to tell him he had spoken to Mr. Miller, who had agreed to the asphalt removal. Defendant then went to village hall and was issued a permit. The repavement work was commenced that day and completed within three or four days.

On August 26, 1998 (one month after his sole interaction with plaintiff), defendant wrote and mailed the letter that is the subject of this lawsuit to Greg Klatecki, the village president. Defendant conceded that he knew the village president was not plaintiff's immediate supervisor and that he had done no investigation into the organizational structure of the Village government to learn the supervisor's identity. Plaintiff alleged that the letter was published to 10 other Village employees. The letter begins as follows:

"I'm filing a formal complaint about behavior of a certain individual which may constitute extortion in my opinion. As you know extortion constitutes a criminal behavior. I'm the victim and its [sic] has caused me damages, which the Village is responsible for."

Later in the letter, the following language appears:

"In my opinion, I'm the victim of extortion by employee [sic] of the Village of Wheeling.

* * *

Some of the cement contractors I spoke too [sic] had past difficulties with Mr. Stavros and really didn't want the future

problems. \*\*\* I talked to one of my neighbors about Mr. Stavros who had dealing [sic] with him about a destruction of a Historical Site and nobody I talk too [sic] seem [sic] to say anything nice. Why is that? Remember, he represents the Village.

What I gathered from some people in the cement trade is that Mr. Stavros is or was in the cement business, while working for the Village. \*\*\* Why doesn't the Village investigate? Could that be a conflict of interest? Is there an Illinois law notice requirement?

These are my allegations, and the Village should investigate the situation. Based upon my experiences, and information is this extortion behavior a general policy of the Village? Is that true? What is Village policy about intimidation and threats to business [sic] and landowners. I'll wait for a public declaration in the Village publication and Village memo to all employees."

The letter also contains a postscript, which reads:

"P.S. Please note, I reported similar behavior, that was reported to me about licensing procedure. Please check you [sic] file of my other certified letters to you. I think this is standard behavior of this Village and in my opinion this behavior is condone [sic] by the Village trustees, which extends to personal liability. To support criminal behavior, (you now have knowledge) through non action, constitutes a personal liability and criminal liability for each of the trustees. I intend to hold each trustee personally liable. Village trustees notices mailed."

During deposition, defendant explained that "extortion," as he understood the term, meant "making me do something with no right to do it." He stated that, when he wrote the letter, he believed extortion was criminal behavior.

When he wrote "caused me damages," defendant was referring to the fact that he had to remove the gravel that was underneath the asphalt on his neighbor's property (or else grass would not grow on the spot) himself, because his contractor did not properly clean it out.

Defendant admitted that plaintiff did not threaten to cite him with a violation of the Village code; did not threaten him or his family with physical harm; did not threaten him with a lawsuit; and that there was no threat of future difficulties in obtaining permits. Further, no one ever told defendant that plaintiff did not have to follow the same requirements as other contractors in the Village in order to obtain a permit for projects undertaken by his own concrete company, or that plaintiff had ever used his position as inspector to steer jobs to his own business.

When asked to explain his reference, in the letter's postscript, to having reported similar behavior about licensing procedure in the past, defendant responded that he had "no idea" to what he was referring when he wrote that paragraph.

Although the letter states "Village trustees notices mailed," defendant admitted that he had not, in fact, mailed notices to Village trustees and that the inclusion of those words was calculated to motivate the Village to "do something" about his letter. Similarly, references in the letter to a civil suit against the Village were not meant as threats, but were intended to "shake them up to do something about this, to look into the matter."

Plaintiff's original three-count complaint contained allegations of defamation (count I); invasion of privacy (count II); and intentional infliction of emotional distress (count III). Defendant filed a combined motion to dismiss pursuant to section 2—619.1 (735 ILCS 5/2—619.1 (West 1998)). That motion was granted without prejudice as to all three counts of the original complaint on September 23, 1999.

On October 22, 1999, plaintiff filed a first amended complaint, in which he realleged all three causes of action. Defendant moved to dismiss counts II and III of that complaint pursuant to section 2—615. The trial court granted that motion without prejudice on February 7, 2000. Plaintiff did not replead counts II and III, and instead elected to proceed solely on count I.

On May 2, 2000, defendant filed a motion to dismiss count I of plaintiff's first amended complaint pursuant to section 2—619(a)(9). In that motion, defendant argued that he acted under a qualified privilege when he wrote the letter to plaintiff's employer, who had an interest in its contents. Further, that no abuse of that privilege had taken place, since it was published only to those Village employees who had an interest in its contents (either as plaintiff's supervisor, or in connection with the investigation that ensued).

Defendant alternatively contended that he wrote the letter under an absolute privilege which applies to statements made "during any step preliminary to or necessary for a judicial or quasi-judicial proceeding."[1]

Finding that the contents of defendant's letter were qualifiedly privileged, the trial court granted defendant's final motion to dismiss, with prejudice, on July 17, 2000. This timely appeal followed.

## Analysis

●1 Section 2—619(a)(9) provides for involuntary dismissal of a cause of action where the claim asserted is barred by "affirmative matter" avoiding the legal effect of or defeating the claim. 735 ILCS 5/2—619(a)(9) (West 1998). An "affirmative matter" is something in the nature of a defense that completely negates the cause of action or

---

[1]The trial court made no finding with respect to absolute privilege, and defendant does not argue before this court that an absolute privilege applied.

refutes crucial conclusions of material fact contained in or inferred from the complaint. *Antler v. Classic Residence Management Ltd. Partnership*, 315 Ill. App. 3d 259, 264 (2000). Our review of the grant of a motion to dismiss under section 2—619 is *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993).

●2 To make out a claim of defamation, a plaintiff must set forth sufficient facts to show that the defendant made a false statement concerning plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by defendant, and that plaintiff was damaged. *Krasinski v. United Parcel Service, Inc.*, 124 Ill. 2d 483, 490 (1988).

We must first consider whether the references contained in the letter to plaintiff having committed extortion may be considered defamatory.

●3 Under our common law, four categories of statements are considered actionable *per se* and give rise to a cause of action for defamation without a showing of special damages. They are: (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of office or employment; or (4) words that prejudice a party or impute a lack of ability in his or her trade, profession or business. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10-11 (1992). We agree with plaintiff that the letter's repeated references to extortion are defamatory *per se* under the first category set forth above.

●4 Defendant submits that the complained-of references are mere expressions of opinion, clearly expressed as such, and thus are not actionable as a matter of law. See *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 521 (1998). We find this argument unpersuasive. The emphasis in the test for determining the actionability of an allegedly defamatory statement of opinion is whether the statement contains an objectively verifiable assertion. *Wynne v. Loyola University*, 318 Ill. App. 3d 443, 452 (2000). We consider the assertion that plaintiff committed extortion to be objectively verifiable and therefore actionable. Further, that defendant may have prefaced his assertions with "In my opinion," does not exempt them from the defamatory realm, since a false assertion of fact can be defamatory even though couched in terms of an opinion. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 99-100 (1996), quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 111 L. Ed. 2d 1, 18, 110 S. Ct. 2695, 2706 (1990).

Next, we consider whether the circumstances under which defendant wrote the letter rendered its contents conditionally (or "qualifiedly") privileged.

●5 A privileged communication is one which, except for the occasion on which or the circumstances under which it is made, might be defamatory and actionable. *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16, 24 (1993). This privilege is based on the policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information. See 2 S. Harper, F. James & O. Gray, Law of Torts § 5.25, at 213 (2d ed. 1986). In Illinois, the issue of whether a qualified privilege exists has been a question of law for the court, and the issue of whether the privilege was abused has been a question of fact for the jury. *Kuwik*, 156 Ill. 2d at 25, citing *American Pet Motels, Inc. v. Chicago Veterinary Medical Ass'n*, 106 Ill. App. 3d 626, 631 (1982), and *Zeinfeld v. Hayes Freight Lines, Inc.*, 41 Ill. 2d 345, 349 (1968). See also *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 167-68 (1998).

●6 Conditionally privileged occasions may be divided into three classes: (1) situations in which some interest of the person who publishes the defamatory matter is involved; (2) situations in which some interest of the person to whom the matter is published or of some other third person is involved; and (3) situations in which a recognized interest of the public is concerned. *Kuwik*, 156 Ill. 2d at 29.

●7 Applying these categories to the instant case, we find that a qualified privilege existed when defendant sent the letter to the Village. Village officials, including the mayor (to whom the letter was addressed), clearly have an interest in knowing whether Village employees are performing their official duties in a professional manner and whether Village residents have negative feelings with respect to interactions with those employees. Accordingly, the occasion for the letter was one where a misstatement of information should be afforded some degree of protection in order to facilitate the free flow of correct information.

Such a finding does not end our inquiry (*Gist v. Macon County Sheriff's Department*, 284 Ill. App. 3d 367, 373 (1996)), however, since even if a qualified privilege exists, a communication can still be defamatory and actionable if the privilege is abused. *Cianci v. Pettibone Corp.*, 298 Ill. App. 3d 419, 426 (1998). A plaintiff can prove that a qualified privilege was abused by establishing " 'any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties.' " *Gist*, 284 Ill. App. 3d at 374, quoting *Kuwik*, 156 Ill. 2d at 30. As we have earlier noted, the potential abuse of a privilege raises a question of fact for a jury to resolve. *Kuwik*, 156 Ill. 2d at 25; *Lykowski*, 299 Ill. App. 3d at

167-68. Accordingly, we next consider the question whether defendant here may have abused his qualified privilege. Plaintiff maintains that defendant's repeated use of the word "extortion" in characterizing plaintiff's conduct indicated a failure to investigate the truth of the matter, thus forfeiting the privilege and rendering the letter's contents actionable.

In reviewing this contention, we are guided by the supreme court's reasoning in *Kuwik*, a case that is factually similar to the one before us. In *Kuwik*, a chiropractor brought a libel action against her patient's health insurer, the insurer's attorney and others (partially) on the basis of a letter sent by the insurance company's attorney to the Department of Insurance (the Department) regarding the scope of the plaintiff's medical license. The letter contained the attorney's conclusion, on behalf of the company, that certain tests ordered by the plaintiff were outside the scope of her license. That conclusion was inaccurate. The attorney later admitted that he had failed to read the chiropractic licensing statute prior to publishing the letter to the Department.

The supreme court first determined that the circumstances under which the attorney wrote the letter were qualifiedly privileged, in that the Department had an interest in responding to the complaint it had received from the insured. However, the court went on to rule that the attorney's failure to familiarize himself with the scope of the plaintiff's license prior to essentially accusing the plaintiff of practicing outside of the scope thereof raised a genuine issue of material fact with respect to whether the qualified privilege had been forfeited through abuse. This was, the court stated, a matter for the jury to determine.

Similarly, the defendant here, who later admitted that he was ignorant of the legal definition of "extortion," nonetheless published a letter in which he blatantly accused plaintiff of having committed it. The letter makes it clear that defendant knew extortion was a crime, his status as a layman notwithstanding. Further, the references contained therein to a potential lawsuit against the Village, and to the fact that the Village was, by the letter, being put "on notice" suggest that defendant was not unaware of the gravity of his allegations. It is possible that a finder of fact would determine that defendant should have investigated more carefully "the matter," *i.e.*, the definition of extortion, to determine whether plaintiff's behavior in fact amounted to this criminal behavior, prior to sending the letter to plaintiff's employer.

We therefore find that plaintiff has raised a triable issue of fact with respect to whether defendant has abused the conditional privilege under which he wrote the letter and hold that the trial court erred in granting defendant's motion to dismiss.

1060

## Conclusion

On the basis of the foregoing, we reverse the trial court's grant of dismissal and remand this matter for further proceedings consistent with the views expressed herein.

Reversed and remanded.

HARTMAN, P.J., and SOUTH, J., concur.