No. 1–01–2050 First Division

November 27, 2002

PHOEBE MEDOW ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

) No. 97 L 16360

)

DANIEL FLAVIN, ) The Honorable

) David G. Lichtenstein,

Defendant-Appellee ) Judge Presiding.

JUSTICE COHEN delivered the opinion of the court:

Plaintiff Phoebe Medow filed a three-count complaint against defendant Daniel D. Flavin accusing Flavin of slander (count I), libel (count II), and conversion (count III).  The trial court granted summary judgment in favor of Flavin on counts I and II of Medow's complaint.  Following a trial on count III, a jury found Flavin liable for conversion and awarded Medow $1,500 in compensatory damages and $37,500 in punitive damages.  The trial court, however, entered judgment notwithstanding the verdict (JNOV) in favor of Flavin as to punitive damages.  On appeal, Medow argues that the trial court erred in: (1) granting summary judgment in favor of Flavin on counts I and II of her complaint; and (2) entering JNOV in favor of Flavin as to punitive damages.  For the following reasons, we reverse and remand..

BACKGROUND

Medow sold her travel agency, Way to Go Travel, to Creative Travel and Tours, Inc. (Creative Travel) for $40,000.  In his capacity as vice president of Creative Travel, Flavin entered into an Asset Purchase Agreement (APA) with Medow, which outlined the terms of the sale.  Pursuant to the APA, Medow continued working for Way to Go Travel as an independent contractor following the sale.  On August 25, 1988, Flavin terminated Medow's association with Way to Go Travel.  In 1989, Flavin filed a lawsuit against Medow.
(footnote: 1)  Medow filed a counterclaim accusing Flavin of slander, libel and conversion.  Medow's counterclaim was subsequently dismissed for want of prosecution on January 7, 1997.  On December 22, 1997 (within one year of the dismissal for want of prosecution),  Medow filed the instant complaint pursuant to section 13–217 of the Code of Civil Procedure.  735 ILCS 5/13–217 (West 1996).

In count I of her complaint, Medow alleged that Flavin had committed slander 
per se
 on August 26, 1988, when he told a representative of Della Femina McNamee WCRF (Della Femina), a Chicago advertising firm, that Medow's association with Way to Go travel was terminated "for theft."  As evidence of Flavin's alleged August 26 oral statement, Medow attached a November 22, 1988, letter written by Flavin to Della Femina's vice chairman John Wiegand.  In the letter, Flavin informed Wiegand that Medow's "association with Way to Go Travel was terminated on August 25, 1988[,] for theft and your office was advised on the 26th."  Medow's allegation of libel in count II is predicated on Flavin's written statement in the November 22 letter.

In count III of her complaint, Medow alleged that Flavin converted numerous items of Medow's personal property.  Specifically, Medow alleged that when Flavin terminated her employment, he did not permit her an opportunity to remove her personal belongings from the Creative Travel office.  Medow further alleged that, through her attorney, she sent letters to Flavin both on September 23, 1988, and October 6, 1988, demanding the return of her personal belongings.  Medow alleged that Flavin failed to return a number of items.

On July 27, 1998, Flavin moved for summary judgment on counts I and II of Medow's complaint.  Flavin argued that summary judgment was appropriate as to count I because Medow could not present sufficient evidence to prove that Flavin had made an oral statement accusing Medow of theft.  In support, Flavin attached a transcript of Medow's deposition.  During her deposition, Medow testified that she had never personally heard Flavin accuse her of theft and no one had told her that Flavin accused her of theft.  Flavin also attached his own affidavit in support of the summary judgment motion.  In his affidavit, Flavin averred that on August 26, 1988, he told an employee of Della Femina that Medow had been terminated but did not tell the employee that Medow had committed theft.

Flavin argued that summary judgment was appropriate as to count II because the November 22 letter containing the allegedly libelous statement was absolutely privileged as a communication pertinent to a legal proceeding.  In his affidavit, Flavin admitted that he wrote the November 22 letter and that the letter stated that Medow's "association with Way to Go Travel, Inc., was terminated on August 25, 1988[,] for theft and [Della Femina's] office was advised on August 26."  Flavin averred that the quoted language "meant that Della Femina's office was advised on August 26 that Phoebe Medow had been terminated, *** and not that the termination was for theft."  Flavin further averred that his purpose in writing the letter was to settle a small claims action, which he had filed in his capacity as managing officer of Creative Travel against Della Femina   In support of his summary judgment motion, Flavin attached a copy of the November 22 letter, a December 2, 1988, letter from Della Femina agreeing to settle the small claims suit, and a copy of the single paragraph small claims complaint.
(footnote: 2)
 Medow filed a response to the motion for summary judgment arguing that Flavin's motion and supporting evidence demonstrated the existence of a question of material fact as to whether Flavin orally informed a Della Femina employee that Medow committed theft, thereby precluding summary judgment on count I.  As to count II, Medow argued that because section 586 of the Restatement (Second) of Torts (Restatement) (Restatement (Second) of Torts, §586 (1977)) provides an absolute privilege only to communications made by attorneys, the privilege would not extend to Flavin's statements.  Medow further argued that Flavin's statements were not privileged because any suggestion that Medow had committed theft was irrelevant to the litigation between Creative Travel and Della Femina.

Following a hearing on October 14, 1998, the trial court granted summary judgment in favor of Flavin as to count I of Medow's complaint and took Flavin's motion under advisement as to count II.  On December 2, 1998, the trial court granted summary judgment in favor of Flavin on count II, finding that section 587 of the Restatement (Restatement (Second) of Torts, §587 (1977)) "extends the absolute privilege to communications preliminary to a proposed judicial proceeding by parties and witnesses as well as attorneys."  The trial court further found  that, pursuant to 
Skopp v. First Federal Savings
, 189  Ill. App. 3d 440, 447-48 (1989), "all doubts will be resolved in favor of a conclusion that the communication is pertinent or relevant."

The matter ultimately proceeded to trial on count III of Medow's complaint.  At trial, Medow testified that she decided in early 1988 to sell Way to Go Travel because her husband was suffering from a terminal illness.  Medow entered into an Asset Purchase Agreement with Creative Travel, effective May 16, 1988.  Medow then continued to work for Way to Go Travel as a commissioned  independent contractor pursuant to the APA until her employment was terminated by Flavin on August 25, 1988.  Medow testified that Flavin informed her of the termination by telephone and told her that she was no longer welcome in the office.  According to Medow, the office contained many of her personal items, items which Flavin never returned.

Shortly after the termination, Medow retained attorney Marty Schwartz.  Following negotiations between Schwarz and Creative Travel's attorney, Medow was permitted to return to the office some time after August 1988 to retrieve those of her personal items that were hanging on the office walls.  When Medow attempted to open a drawer to the desk she had previously used, Flavin stopped her.  Schwarz advised Medow that, under the agreement negotiated by the attorneys, she was limited to recovering only those personal items hanging on the walls.  Medow testified that Flavin sent boxes of personal items to her on two occasions after her termination, but that the boxes contained nothing of value to her.  

Plaintiff enlisted the assistance of the Illinois Attorney General's office in late 1988 or early 1989.  A woman from the Attorney General's office called Creative Travel on Medow's behalf; however, upon learning that a lawsuit had been filed, the Attorney General's office declined to take any further action, explaining that the matter should be resolved as part of the litigation. Finally, Medow testified that Flavin filed an affidavit during the course of the 1989 litigation admitting that he had seen some of the items that Medow claimed had been converted.  A file-stamped copy of this affidavit was admitted into evidence.

Testifying next, Schwarz confirmed Medow's account regarding the agreement to permit Medow to remove her belongings from the office walls.  Schwarz also identified letters which he had written and sent to Flavin's attorney in September and October 1988 demanding the return of Medow's personal belongings.  Schwarz testified that Flavin returned a box containing some of Medow's personal property in October 1988.  Schwarz recalled that the box contained primarily items of clothing.

Medow's son Ross Medow testified that he worked at Way to Go Travel until his employment was terminated at the end of June 1988.  Ross testified that he removed many of his personal belongings when he was fired, but Flavin prevented Ross from accessing a box containing a set of Ross' knee x-rays, which was stored in a closet at the office.  Ross also testified that he had seen many of the allegedly converted items in the office prior to his termination.  Ross did not return to the office following the termination.

Called as an adverse witness, Flavin admitted that he had signed the 1989 affidavit during the earlier litigation and acknowledged that, in the affidavit, he had admitted seeing an autographed picture of Medow with Willie Mays when he cleaned off Medow's desk following her termination.  Flavin testified that he now believes that he actually saw a photograph of a different baseball player and not the photograph of Medow with Mays.  Flavin acknowledged that in the 1989 affidavit he denied seeing some of the items Medow claimed were converted, indicated that he had seen others, and acknowledged that some paper items belonging to Medow could have been "inadvertently discarded" or lost when Creative Travel moved its office.

In his direct testimony, Flavin testified that disagreements arose between him and Medow following the sale of Way to Go Travel and that he noticed that mail was being "intercepted" in early August.  Flavin noted an August 11, 1988, letter written to him by Medow.  The letter, which was admitted into evidence, expresses Medow's concern with Flavin's lack of diligence in securing regulatory approval from the Airline Reporting Corporation (ARC) for the change in ownership of Way to Go Travel.  Medow also complained that Flavin had failed to assume responsibility for the telephone equipment or telephone line of Way to Go Travel.  Medow further expressed concern that Flavin was violating ARC rules by exercising control over airline ticket stock and payments for airline tickets prior to ARC approval of the ownership change.  Medow's letter concludes by informing Flavin that Medow would "open and retain any and all checks sent in payment of invoices or as commission."  Flavin testified that, on the advice of his attorney, Flavin terminated Medow's employment by telephone on August 25, 1988, after Medow took the keys to the safe deposit box in which ticket stock was kept.  Flavin testified that he informed Medow that she was not welcome back in the office.

Flavin also testified that the parties' attorneys negotiated an agreement to permit Medow to return to the office in late September or early October 1988 to remove those of her belongings hanging on the walls.  Flavin testified that, because Medow arrived so late in the day, there was no opportunity to discuss property that might be located elsewhere in the agency.  Following Medow's termination, Flavin told office manager Rod Quiros to go through the office and find personal items belonging to Medow.  Flavin testified that the items located by Quiros were boxed and delivered to Schwarz on October 9, 1988.

Flavin testified that he received a telephone call from a woman at the Attorney General's office in January 1999.  The woman indicated that Medow wished to retrieve personal property located at the Creative Travel office.  Flavin informed the woman that the Attorney General could send someone over with a list, but Medow would not be permitted to come to the office.  Flavin testified that did not hear from the Attorney General's office again.

In March 1989, Creative Travel relocated its office.  Prior to the move, Flavin hired a woman named Jean Carter and Carter's daughter to sort through papers and property in the office.  The two women were provided a copy of the APA, describing what property Medow retained following the sale of the agency.  A copy of the APA was admitted into evidence and states that Medow retained ownership of all paintings, pictures, clocks, "[s]ouverniers" [
sic
], collector's plates, "Nick Nacks," a "[s]hip's wheel," a computer chair, a microwave oven, baseball bats, wall hangings (not including brochure racks), "Phoebe Medow's dictionary," and "any other item of a purely personal nature."  Flavin testified that Carter and her daughter were instructed to segregate any personal items belonging to Medow.  Flavin testified that, during the office move, two boxes were inadvertently left on a loading dock and never recovered.  Flavin could not say whether any of Medow's property had been in those boxes.

Flavin acknowledged receiving an August 17, 1989, letter from Schwarz to Flavin's attorney containing a list of specific property that Medow wished to have returned.  Flavin testified that, at the time he received the August 17 letter, neither he nor Creative Travel was in possession of any item on the list with the possible exception of some customer lists.  Flavin testified that, shortly after purchasing Way to Go Travel, he cleaned out a closet containing a six-inch-deep stack of papers.  According to Flavin, Medow thanked him for cleaning up and commented that the office looked much better after he threw away old papers.  Flavin testified that, although he lived on the same floor of the same apartment building as Medow, Medow never approached him to personally request the return of any specific item of personal property

Finally, Flavin's wife Janet Vanell testified.  Vanell was co-owner of Creative Travel but took no part in the day-to-day affairs of the company.  Vanell testified that when she saw the Way to Go Travel office prior to purchasing the agency, papers were scattered everywhere in no apparent order, especially on Medow's desk.  Vanell also testified that she saw Medow regularly in their apartment building but Medow never spoke to Vanell about any missing personal property.

The jury found Flavin liable for conversion and awarded Medow $1,500 in compensatory damages and $37,500 in punitive damages.  Flavin subsequently moved for JNOV or, in the alternative, for a new trial as to the finding of liability for conversion.  Defendant moved separately for JNOV or a new trial as to punitive damages.  The trial court denied Flavin's motion as to liability but granted JNOV as to punitive damages.  Medow appeals.

ANALYSIS

I.   Summary Judgment

Medow first argues that the trial court erred in granting summary judgment in favor of Flavin on counts I (slander) and II (libel) of her complaint, alleging slander and libel.  Summary judgment is proper if the pleadings, depositions and admissions on file, along with any affidavits, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   735 ILCS 5/2-1005(c) (West 2000).  The burden of proof and the initial burden of production in a motion for summary judgment lie with the movant.  
Pecora v. County of Cook
, 323  Ill. App. 3d 917, 933 (2001).  
It is well established that in determining whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent.
  Watkins v. Schmitt
, 172 Ill.2d 193, 203 (1996).  Because the propriety of an order granting summary judgment is a question of law, our review of such an order is 
de novo
.  
Pagano v. Occidental Chemical Corp., 
257  Ill. App. 3d 905, 909 (1994).

A defendant who moves for summary judgment may meet the initial burden of production either: (1) by affirmatively showing that some element of the cause of action must be resolved in defendant's favor; or (2) by demonstrating that plaintiff cannot produce evidence necessary to support the plaintiff's cause of action.  
Pecora
, 323  Ill. App. 3d at 933-34.  In either case, the defendant meets its burden by producing evidence that would clearly entitle defendant to judgment as a matter of law.  
Pecora
, 323  Ill. App. 3d at 934, citing 
Malone v. American Cyanamid Co.
, 271  Ill. App. 3d 843, 846 (1995) and 
Williams v. Covenant Medical Center
, 316  Ill. App. 3d 682, 690 (2000). 

Although the common law originally distinguished between spoken and written defamation (slander and libel, respectively), in Illinois the same standard applies whether an allegedly defamatory statement is spoken or written.  
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 89 (1996).  To establish either slander or libel, a plaintiff must show that: (1) defendant made a false statement concerning plaintiff; (2) there was an unprivileged publication of the defamatory statement by defendant to a third party; and (3) plaintiff was damaged.  
Stavros v. Marrese
, 323  Ill. App. 3d 1052, 1057 (2001).

A.   Slander

In support of his motion for summary judgment,  Flavin submitted an affidavit in which he averred that he "did not inform any representative of Della Femina *** on or about August 26, 1988[,] that [Medow] had committed theft."  In the face of supporting affidavits from the moving party, the nonmovant must submit counteraffidavits (or refer to depositions or admissions on file) in order to raise an issue of fact sufficient to survive summary judgment.  
Werckenthein v. Bucher Petrochemical Co
., 248 Ill. App. 3d 282, 288 (1993).  Failure to file counteraffidavits in opposition to a summary judgment motion supported by affidavits is fatal.  
Fitzpatrick v. Human Rights Comm'n
, 267 Ill. App. 3d 386, 391 (1994).

Medow argues that Flavin's November 22 letter to Wiegand raises a genuine issue of fact as to whether Flavin accused Medow of theft during an August 26, 1988, conversation with a Della Femina employee. In his affidavit, Flavin acknowledged both writing and sending  this letter.  Although Flavin argues that the letter does not reveal whether Flavin or some other individual "advised [Della Femina] on August 26," Flavin admitted in his affidavit that he personally "inform[ed] some employee of Della Femina on [August 26] that [Medow] was no longer with Way to Go Travel."  No evidence was submitted suggesting that any additional Creative Travel representative communicated with Della Femina on August 26 regarding Medow's termination.  Accordingly, we find the evidence sufficient to raise a genuine issue of fact as to whether Flavin made the communication referred to in the November 22 letter. 

Flavin argues that the November 22 letter should be read as indicating only that Della Femina was advised of Medow's termination on August 26 and not that Della Femina was advised that Medow was terminated "for theft."  The sentence at issue is comprised of two independent clauses joined by a conjunction.  Taken separately, the latter clause–"your [Della Femina's] office was advised on August 26"–does not specifically indicate what Della Femina was advised.  This latter clause, however, clearly relates to the former–"[Medow's] association with Way to Go Travel was terminated on August 25, 1988[,] for theft."  Reading the sentence as a whole, in the light most favorable to Medow, we find that the the second clause indicates that Della Femina was advised on August 26 that Medow's association with Way to Go Travel was terminated for theft on August 25. 

Finally, Flavin argues that Medow's allegation of slander cannot stand because Medow has  no evidence of the specific words allegedly uttered by Flavin on August 26, 1988.  In support, Flavin quotes the decision of the Fourth District in 
Hill v. Leffler, 
133 Ill. App. 266 (1907), holding that "[i]t is not sufficient that the words alleged be proved substantially.  They must be proved literally and enough of them to establish the slander charged.  Other equivalent words will not do."  This district, however, has rejected the holding in 
Hill
 as contrary to well-established precedent set by our supreme court.  
Newstedt v. Meyer
, 155 Ill App. 550, 552 (1910).  See 
e.g.
, 
Iles v. Swank
, 202 Ill. 453, 455 (1903) ("[I]t is not necessary to prove all of the words that are charged to have been spoken.  It is sufficient to prove substantially any set of words in some one or more of the statements of slanderous words contained in the [complaint] and the different counts thereof."); 
Ranson v. McCurley
, 140 Ill. 626, 635-36 (1892) ("[The words alleged in the declaration, or enough of them to amount to a charge of the particular offense alleged to have been imputed must be substantially proved.") Medow's complaint alleges Flavin made a statement accusing her of theft.  The November 22 letter coupled with the admissions in Flavin's affidavit is sufficient to substantially prove the defamation alleged in Medow's complaint.

Viewing the evidence in the light most favorable to Medow (
Watkins
, 172 Ill. 2d at 203), we find a genuine issue of fact has been raised as to whether Flavin told a Della Femina representative on August 26 that Medow was terminated for theft.  Summary judgment was therefore improperly entered on count I of the complaint.  735 ILCS 5/2–1005 (West 2000).

B.   Libel

Count II of Medow's complaint alleged libel based on the written statement in Flavin's November 22 letter to Wiegand indicating that Medow was terminated for theft.  Flavin argued and the trial court found that this statement was absolutely privileged pursuant to section 587 of the Restatement.   In a defamation action, a claim of absolute privilege is treated as an affirmative defense.  
Lykowski v. Bergman
, 299  Ill. App. 3d 157, 165 (1998).  Where a defendant moves for summary judgment based on an affirmative defense, the defendant must present admissible evidentiary matter sufficient to establish a factual basis for the affirmative defense raised.  
Soderlund Bros., Inc. v. Carrier Corp.
, 278  Ill. App. 3d 606, 615 (1995).

Section 587 of the Restatement provides:

"A party to private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding."  Restatement (Second) of Torts, §587 (1977).

In Illinois, the absolute privilege provided by section 587 applies to statements which are "relevant, pertinent, or bear some relation to the subject in controversy."  
Defend v. Lascelles, 
149  Ill. App. 3d 630, 634-640 (1986).

1.  Validity of Creative Travel/Della Femina Litigation

Medow first argues that the litigation privilege provided by section 587 of the Restatement does not apply in this case because the lawsuit brought by Flavin on behalf of Creative Travel was void 
ab initio
 pursuant to Supreme Court Rule 282(b), which expressly prohibits a "corporation [from] appear[ing] as claimant, assignee, subrogee or counterclaimant in a small claims proceeding, unless represented by counsel."  See 
Berg v. Mid-America Industrial
, 293  Ill. App. 3d 731, 736 (1997) (holding that "proceedings *** involving a layperson representing a corporation are null and void 
ab initio
").  Flavin responds that section 2–416 of the Code of Civil Procedure expressly permits "a corporation [to] prosecute as plaintiff *** any small claims proceeding in any court of this State through any officer, director, manager, department manager or supervisor of the corporation, as though such corporation were appearing in its proper person." 

The appellate court is divided as to whether section 2–416 or the Supreme Court Rule 282(b) controls.  Compare 
Woerner v. Seneca Petroleum, Inc.
, 175  Ill. App. 3d 329, 331 (3rd Dist. 1988) (holding that "[o]ur legislature preempted the question of 
pro se 
representation of corporations by enacting section 2-416 almost four years prior to the supreme court's adoption of Rule 282") with 
Real Estate Buyer's Agents, Inc. v. Foster
, 234  Ill. App. 3d 257, 260 (2nd Dist. 1992) (holding that "when a statute directly and irreconcilably conflicts with a supreme court rule within the court's authority, the rule prevails").   Neither the First District nor our supreme court has yet addressed the conflict between section 2–416 and Supreme Court Rule 282(b).

We need not resolve the conflict between section 2–416 and Supreme Court Rule 282(b), however, to determine whether the litigation privilege applies.  Section 587 of the Restatement expressly provides that the privilege applies to statements made in "communications preliminary to a proposed judicial proceeding" as well as to communications made "during the course of" such proceedings.  Restatement (Second) of Torts, §587 (1977). Comment e to section 587 explains that, for a statement to qualify as a made in "communications preliminary to a proposed judicial proceeding," the proposed proceeding must be "contemplated in good faith and under serious consideration."  Restatement (Second) of Torts, §587, Comment e (1977). Thus, whether or not Flavin could 
properly
 file a small claims complaint on behalf of Creative Travel, the actual filing of that complaint in reliance on the statutory authority of section 2–416 adequately demonstrates, at minimum, that the Creative Travel/Della Femina litigation was "contemplated in good faith and under serious consideration."  Accordingly, the applicability of the litigation privilege turns on whether the allegedly defamatory matter was pertinent to the subject in controversy.

2.  Pertinence

The litigation privilege provides immunity from civil suit for defamatory statements made preliminary to or during the course of litigation so long as the defamatory matter is pertinent to the litigation.  
Defend
, 149  Ill. App. 3d at 640.  The requirement that statements made in a judicial proceeding be pertinent or relevant is not strictly applied.  
Popp v. O'Neil
, 313  Ill. App. 3d 638, 642 (2000).  Indeed, the privilege attaches even where the defamatory statement is not confined to specific issues related to the litigation and all doubts should be resolved in favor of a finding of pertinency.
  Malevitis v. Friedman
 322  Ill. App. 3d 1129, 1131 (2001).  Inflammatory matter entirely unrelated to the litigation, however, is not privileged.  
Malevitis
,
 
322  Ill. App. 3d at 1131. 

Flavin argues that the allegedly defamatory statement that Medow was terminated "for theft" is absolutely privileged because the November 22 letter as a whole is clearly pertinent to the Creative Travel/Della Femina litigation.  Flavin further argues that, in determining whether the litigation privilege applies, we should not parse the phrase "for theft" from the letter but should only consider the pertinence of the letter as a whole.  According to Flavin, the Restatement "specifically disavows parsing."  In support, Flavin quotes comment c to section 587, stating that a defendant " 'is not answerable for defamatory matter 
volunteered or included by way of surplusage
 in his pleadings if it had any bearing upon the subject matter of the litigation.' "  (Flavin's emphasis.)  Restatement (Second) of Torts, §587, Comment c (1977).

Flavin fails to recognize that comment c to section 587 of the restatement expressly requires that "surplussage *** bear[] upon the subject matter of the litigation" before the litigation privilege will apply.  Further, section 587 provides that a defendant "is absolutely privileged to publish defamatory matter *** in communications *** if 
the matter
 has some relation to the proceeding," not if the communication as a whole is related to the proceeding.  (Emphasis added.)  Restatement (Second) of Torts, §587 (1977).   Rather than disavowing parsing, as Flavin claims, the Restatement specifically requires that we consider the relevance of the specific defamatory matter rather than the relevance of the communication as a whole.

While claiming that the November 22 letter was privileged as a communication pertinent to pending litigation between Creative Travel and Della Femina, Flavin presented surprisingly little evidence regarding the specific subject matter of the Creative Travel/Della Femina litigation.  The complaint filed in that case reveals only that Creative Travel sued Della Femina for nonpayment of three invoices.  The underlying factual basis for this claim is not indicated.  In the November 22 letter, Flavin advises Wiegand that Medow was terminated "for theft" from Creative Travel on August 25, 1988, and any payments made by Della Femina to Medow would not apply as payment of any outstanding invoices.
(footnote: 3)  In his affidavit, Flavin asserts that his purpose in writing the letter was to settle the pending litigation.  Although Flavin argues in his brief that the assertion that Medow was terminated "for theft" was relevant to a dispute between Medow and Creative Travel regarding a $2,000 check issued by Della Femina, none of the evidence presented in support of the motion for summary judgment suggests that the Creative Travel/Della Femina litigation was related to the disputed $2,000 check. 

While we are mindful that the requirement of pertinence is not strictly applied (
Popp
, 313  Ill. App. 3d at 642) and that all doubts should be resolved in favor of a finding of pertinence (
Malevitis
, 322  Ill. App. 3d 1131), Flavin as movant bore the burden of presenting sufficient evidence to establish a factual basis for applying the litigation privilege (
Soderlund Bros., Inc.
, 278  Ill. App. 3d at 615).  The vagueness and paucity of Flavin's evidence leave this court with little insight into the subject matter of the Creative Travel/Della Femina litigation and, accordingly, no factual basis for finding the allegedly defamatory statement pertinent to that litigation.  We therefore reverse the entry of summary judgment as to count II of the complaint.  In so holding, we make no determination as to whether the litigation privilege in fact applies.  Rather, we hold only that Flavin has failed to meet his burden to present evidence sufficient to establish the absolute privilege as a matter of law.  
Pecora
, 323  Ill. App. 3d at 934.

II.  Judgment Notwithstanding the Verdict

A.   Standard of Review

Medow next challenges the trial court's ruling granting Flavin JNOV as to punitive damages.  Before we can address the propriety of the trial court's ruling, we must first resolve the dispute between the parties as to the appropriate standard for our review.  Medow, citing 
Los Amigos Supermarket, Inc. v. Metropolitan Bank & Trust Co.
, 306  Ill. App. 3d 115, 122 (1999), argues that  this court should review a trial court's ruling on a motion for JNOV 
de novo 
applying the well-established 
Pedrick
 standard.  In 
Pedrick v. Peoria & Eastern R.R.
 
Co.
, 37 Ill. 2d 494, 510 (1967), our supreme court held that JNOV should be "entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."  

Flavin, however, believes that we should apply an abuse of discretion standard.  Quoting 
Pcx Corp. v. Ross
, 209  Ill. App. 3d , 530, 539 (1991) and citing 
LID Associates v. Dolan
, 324  Ill. App. 3d 1047 (2001), Flavin argues that because a "request for punitive damages is a matter addressed to the sound discretion of the trial court *** a decision to deny such damages will not be reversed absent an abuse of discretion."  Neither 
Pcx Corp
. nor 
LID Associates
 addressed a ruling on a motion for JNOV.  Furthermore, both cases are contrary to controlling supreme court precedent.  Our supreme court has unambiguously held that "the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law."  
Kelsay v. Motorola, Inc.
 74 Ill. 2d 172, 186 (1978).  Our supreme court has further noted that "whether punitive damages can be awarded for a particular cause of action is a matter of law." 
 
Cirrincione v. Johnson
, 184 Ill. 2d 109, 116 (1998) (further holding that punitive damages can be awarded for conversion).  Like our colleagues in 
Schmidt v. Ameritech Illinois
, 329  Ill. App. 3d 1020, 1038 (2002):

"we adhere to the supreme court's language in Cirrincione: 'While the question of whether punitive damages can be awarded for a particular cause of action is a matter of law [citation], the question of whether a defendant's conduct was sufficiently willful or wanton to justify the imposition of punitive damages is for the jury to decide [citation].' " 
Schmidt
, 329  Ill. App. 3d at 1038 quoting 
Cirrincione
, 184 Ill. 2d at 116.

It is well-established that questions of law are
 
reviewed 
de novo
.  
Benson v. Abbot
, 326  Ill. App. 3d 599, 600 (2001).

Conforming to the established precedent of our supreme court, we review the trial court's grant of JNOV on the issue of punitive damages 
de novo
 and will uphold that decision only if "all of the evidence, when viewed in its aspect most favorable to [Medow], so overwhelmingly favors [Flavin] that no contrary verdict based on that evidence could ever stand."  
Pedrick
, 37 Ill. 2d at 510; 
Kelsay
,
 
74 Ill. 2d at 186; 
Cirrincione
, 184 Ill. 2d at 116.  See also 
Barton v. Chicago and North Western Transportation Co.
, 325  Ill. App. 3d 1005, 1030 (2001) (appellate court reviewed motion for JNOV as to punitive damages 
de novo
, applying 
Pedrick 
standard). 

B.   Bystander's Report

In lieu of a verbatim transcript of the trial proceedings, the record on appeal contains a bystander's report filed pursuant to Supreme Court Rule 323(c).  166 Ill. 2d R. 323(c).  The trial court's order certifying the bystander's report notes that, after reviewing submissions from both Medow and Flavin , the trial court found that "each of the proposed bystander reports have strengths and deficiencies."  Rather than ordering the parties to submit an accurate report correcting the deficiencies of the initial proposals, the trial court simply certified the report submitted by Flavin, finding Flavin's proposed report "more accurate" than the report submitted by Medow.

Supreme Court Rule 323(c) directs the trial court, upon presentation by the parties of proposed bystander reports, to "promptly settle, certify and order filed an 
accurate 
report of proceedings."  (Emphasis added.) 166 Ill. 2d R. 323(c).  The Supreme Court Rules are not merely suggestions to be complied with if convenient but rather obligations which the parties and the courts are required to follow.  
Clymore v. Hayden
, 278  Ill. App. 3d 862, 869 (1996).  The trial court's order certifying Flavin's proposed report openly acknowledges that the report contains "deficiencies" and concludes not that the report is accurate but only that it is "more accurate" than that submitted by Medow.  The purpose of Rule 323(c)–to provide the reviewing court a reliable basis for review in the absence of a verbatim transcript (see 
Urmoneit v. Purves
, 35  Ill. App. 3d 939, 941-42 (1975))–is unacceptably compromised when the trial court fails to satisfy its obligation to certify an accurate bystander's report and instead certifies a report which is admittedly deficient.  See 
Stehl v. Dose
, 83  Ill. App. 3d 440, 444 (1980) ("A trial judge should never certify a report he knows to be incorrect or inaccurate.").

Medow as appellant bore the burden of presenting this court with an adequate record.  
Landeros v. Equity Property and Development
, 321  Ill. App. 3d 57, 63 (2001).  Because Medow took the proper steps to comply with Supreme Court Rule 323(c), however, we will not deny her right to appeal based on our concerns with the trial court's certification.  
Feldman v. Munizo
, 16  Ill. App. 3d 58, 64 (1957) ("The right of appeal should not be denied a litigant who takes proper steps to comply with the requirement that an adequate report of the proceedings be preserved for review.")  Further, Flavin, as author of the bystander's report certified by the trial court, cannot claim that the bystander's report does not provide an adequate basis for review.  
Auton v. Logan Landfill, Inc.
, 105 Ill. 2d 537, 544 (2001) ("party cannot complain of error which he induced the court to make"). Most importantly, we find the instant record "is sufficiently complete to support [Medow's] claim of error" (
Easter Seal Rehabilitation Center for Will-Grundy Counties, Inc. v. Current Development Corp.
, 307  Ill. App. 3d 48, 49 (1999)) and now review the trial court's ruling granting Flavin JNOV as to punitive damages.

C.   Punitive Damages

In reviewing the trial court's grant of JNOV on the issue of punitive damages, we must determine whether the evidence contained in the record on appeal, when viewed in the light most favorable to Medow, so overwhelmingly favors Flavin that the jury's verdict awarding punitive damages cannot stand.  
Pedrick
, 37 Ill. 2d at 510.   " 'It has long been established in this State that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others ***.' "  
Barton
, 325  Ill. App. 3d at 1030, quoting 
Kelsay
, 74 Ill. 2d at 186.

Flavin testified at trial that he terminated Medow on the advice of counsel after a dispute arose regarding the safe deposit box where airline ticket stock was kept.  A letter from Medow to Flavin dated August 11, 1988, further reflects a dispute over Medow's commissions.  Medow testified at trial that, when her employment was terminated on August 26, 1988, she was told that she was "not welcome" in the Creative Travel office.  Medow was permitted to return to the Creative Travel office to remove those of her personal belongings that were hanging on the office walls only after negotiations between the parties' attorneys; Medow was prohibited from removing personal items from her former desk.  Flavin admitted telling a representative from the Illinois Attorney General's Office that Medow would not be permitted to return to the Creative Travel office to collect personal belongings. 

Furthermore, in the affidavit Flavin filed during the 1989 litigation, Flavin admitted that he had seen at least one personal item belonging to Medow–an autographed photograph of Medow with Willie Mays at Wrigley Field–when Flavin cleaned off Medow's desk following her termination. Flavin did not indicate what he did with the photograph (or any other item removed from Medow's desk) but instead simply averred that he did "not know what became of that item."  At trial, Flavin claimed that he never saw the photograph of Medow with Willie Mays but instead saw a photograph of a different baseball player.  Flavin nevertheless failed to explain what he did with whatever photograph he actually saw.

Flavin also testified at trial that he hired Jean Carter and her daughter in March 1989 to sort through papers and property in the Creative Travel office.  Flavin testified that he provided Carter and her daughter with the list of property retained by Medow pursuant to the APA so that such items could be returned to Medow; however, that list (admitted into evidence) includes such nonspecific entries as "souverniers [
sic
]," "nick nacks," and "any other item of a purely personal nature."  None of the evidence presented at trial explains how Carter or her daughter were to distinguish nick nacks or other personal items belonging to Medow from items belonging to other employees of Creative Travel.  In his affidavit from the 1989 litigation, Flavin admitted that he "did not examine each and every item discarded by [Carter and her daughter]," but claimed he was "relatively certain that nothing of value was thrown away."  Flavin admitted that "[i]t is possible that some of the items on the list were inadvertently discarded in this manner."

The evidence that Flavin barred Medow from returning to collect her personal property after disputes arose regarding the parties' obligations under the APA, taken in the light most favorable to Medow, supports a finding that Flavin acted with actual malice.  Evidence that Flavin cleaned personal items off of Medow's former desk but did not know what then became of those items along with evidence that Flavin, despite multiple requests from Medow's attorney for the return of her personal property, permitted Carter and her daughter to discard papers and property without supervising what was discarded supports a finding that Flavin acted "with such gross negligence as to indicate a wanton disregard of" Medow's rights. 
Barton
, 325  Ill. App. 3d at 1030.

Flavin asserts two additional bases for affirming the trial court's grant of JNOV as to punitive damages.  First, according to Flavin, the trial court sustained his objections when Medow blurted out during her testimony and Medow's counsel argued in closing that Flavin had never paid Medow for Way to Go Travel.  Flavin argues that the amount of the punitive damages award is equal to the agreed purchase price less Flavin's initial payment, thus indicating that the jury improperly awarded punitive damages based upon improper testimony and argument.  The bystander's report of the trial proceedings, however, does not reflect any such improper comment or objection thereto.  On appeal, the content of the bystander's report is conclusive (
Hrosik v. J. Keim Builders
, 37  Ill. App. 3d 352, 354 (1976)) and Flavin as author of that report cannot complain that it is incomplete (
Auton
, 105 Ill. 2d at 544).

Flavin also argues that he barred Medow from returning to the office on the advice of counsel.  According to Flavin, "[n]o client should be punished for taking the advice of his own attorney when such advice is given in good faith to protect the client and its property."  The bystander's report, however, indicates only that "Flavin contacted his own attorney and 
was advised to terminate Ms. Medow
 
immediately
 for the actions she had taken on August 24."  (Emphasis added.)  The bystander's report contains no indication that counsel advised Flavin to bar Medow from the office and prohibit her from collecting her personal belongings.  Furthermore, while evidence that a defendant relied on the advice of counsel may reinforce the defendant's argument that he did not act wilfully, punitive damage awards may be upheld notwithstanding a defendant's reliance on such advice.  
Levy v. Markal Sales Corp.
, 268  Ill. App. 3d 355, 381 (1994).

Because the evidence, when viewed in the light most favorable to Medow, does not so overwhelmingly favor Flavin that the award of punitive damages cannot stand (
Pedrick
, 37 Ill. 2d at 510), we find that the trial court erred in granting JNOV as to punitive damages.

CONCLUSION

For the foregoing reasons, we reverse the entry of summary judgment on counts I and II of Medow's complaint and remand for trial on these counts.  We also reverse the entry of JNOV as to punitive damages under count III of Medow's complaint.

Reversed; cause remanded.

GORDON, PJ., and McNULTY, J., concur.

FOOTNOTES
1:

  The precise nature of this lawsuit and the date it was filed are not reflected in the record on appeal.

2:

  The small claims complaint filed by Flavin against Della Femina alleges:

"Non payment of the following invoices[:]

0000613 Lazzara/Scott August 25, 1988 1,045.00

0000620 McGavin/Thomas August 26, 1988   333.00

0000636 Gaitch/Tom August 31, 1988   655.00 

Filing fee     26.00

Time + expense   440.00"

No further detail regarding the basis of the unpaid invoices is provided in the complaint.

3:

  The letter further refers to a telephone conversation between Flavin and Wiegand during which Wiegand reportedly told Flavin that the "only way we will make payment is if a judge rules on who should be paid." Wiegand's out-of-court statement is hearsay and is not admissible for the truth of the matter asserted.  
Pavlik v. Wal-Mart Stores, Inc.
, 323  Ill. App. 3d 1060, 1064 (2001) ("[H]earsay is an out-of-court statement offered to prove the truth of the matter asserted and is inadmissible unless it falls within one of the recognized exceptions to the rule.")  Moreover, Flavin's statement in the letter indicating that Wiegand in fact made the above statement is itself inadmissible hearsay and, because the statement is not inconsistent with Flavin's position in this case, would not be admissible as a party admission.  
Bafia v. City International Trucks, Inc.
, 258  Ill. App. 3d 4, 9 (1994) ("An 'admission' or statement of a party which is inconsistent with his position at trial is one *** exception to the hearsay rule and may be admitted into evidence against him.") "[E]vidence which would be inadmissible at trial cannot be considered by the court in support of or in opposition to a motion for summary judgment."  
Watkins
, 172 Ill. 2d at 203-04 (1996).