# Illinois Official Reports

## Appellate Court

***Doe v. Williams McCarthy, LLP*, 2017 IL App (2d) 160860**

| | |
|---|---|
| Appellate Court Caption | JANE A. DOE, Plaintiff-Appellant, v. WILLIAMS McCARTHY, LLP; CLAYTON LINDSEY; and TREVA SARVER, Individually and as Trustee of the Ruby Louise Lance Living Trust Dated September 2, 2009, and as Successor Trustee of the Ruby Louise Lance Revocable Living Trust Dated March 15, 2002, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-16-0860 |
| Filed | December 8, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lee County, No. 15-L-4; the Hon. Daniel A. Fish, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Susan M. Brazas Goldberg, of Rockford, for appellant.<br><br>Law Offices of Edward J. Kozel, of Chicago (David A. Sorensen, of counsel), for appellees. |

PRESIDING JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Hutchinson and Spence concurred in the judgment and opinion.

## OPINION

### I. INTRODUCTION

Plaintiff, Jane A. Doe, appeals an order of the circuit court of Lee County dismissing her complaint against defendants, Williams McCarthy, LLP (Williams McCarthy), Clayton Lindsey, and Treva Sarver (individually and in her capacities as trustee of the Ruby Louise Lance Living Trust dated September 2, 2009 and successor trustee of the Ruby Louise Lance Revocable Living Trust dated March 15, 2002), in accordance with section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)). For the reasons that follow, we affirm in part, reverse in part, and remand.

### II. BACKGROUND

Plaintiff's second amended complaint alleged as follows. Plaintiff previously sued Sarver regarding "the validity of the Trust and Estate of a Decedent" (the trust litigation). Sarver was represented in the trust litigation by attorney Lindsey and the law firm that employed him, Williams McCarthy. Plaintiff alleged that defendants violated an order pursuant to the Health Insurance Portability and Accountability Act of 1996 (42 U.S.C. § 1320d *et seq.* (2012)) (HIPAA order) and the Illinois Mental Health and Developmental Disabilities Confidentiality Act (Act) (740 ILCS 110/1 *et seq.* (West 2016)) by disclosing to persons, including the public, without plaintiff's consent and without following the procedures specified in the Act, facts pertinent to plaintiff's mental-health status and treatment.

Plaintiff alleged that, in connection with the trust litigation, defendants filed 11 subpoenas containing protected information. Plaintiff continued, "the [Lee County circuit court] allowed the public to access and view court documents in the [trust litigation], including the documents contained within Plaintiff's court file such as the above-mentioned eleven subpoenas, all of which identified Plaintiff's medical providers and mental health providers, via in-person viewing and via on-line case information searching, until the court entered an Order, on [July 26, 2013], sealing the file from public access." According to plaintiff, this violated the HIPAA order, entered on March 13, 2012, which limited access to such records to "attorneys of record and the staff of the attorneys of record." The complaint went on to allege that defendants knew that certain individuals were "therapists," that Sinnissippi Centers, Inc., in Dixon and Rochelle were mental-health treatment facilities, and that the disclosure of the records of such individuals and facilities violated the Act to the extent that the procedures set forth in the Act were not followed.

The complaint further alleged that Williams McCarthy and Lindsey conveyed such information to Sarver, in violation of the HIPAA order. Further, contrary to the provisions of the Act, defendants did not notify plaintiff's treatment providers that they were seeking access to plaintiff's mental-health records. Moreover, defendants failed to make the threshold

showing that plaintiff had placed her mental health at issue in the trust litigation. Also, prior to any disclosure, the trial court was required to make an *in camera* review of the records. The subpoenas were not accompanied by a judge's written order authorizing the disclosure.

¶ 7    The complaint alleged that Williams McCarthy and Lindsey contacted plaintiff's treatment providers and threatened that they would be held in contempt if they did not release plaintiff's records. During a deposition, Williams McCarthy and Lindsey attempted to question a psychiatrist about plaintiff's mental-health status and treatment, in violation of the HIPAA order and the Act.

¶ 8    The complaint further alleged that Sarver violated the HIPAA order by "viewing and copying such records of Plaintiff[ ] and by obtaining and viewing a listing of Plaintiff's medical providers and mental health providers which Defendants Williams McCarthy and Lindsey had obtained from Attorney Paul Whitcombe, who was then Plaintiff's counsel in the [trust litigation]." Plaintiff stated that, during a deposition, Sarver "made an outburst and yelled, within the hearing of and in the presence of the parties, their counsel, the court reporter, and the deponent, that the Plaintiff was mentally ill." In May 2013, plaintiff received three envelopes in the mail, with no return addresses, containing copies of various medical records, mental-health records, and subpoenas. Finally, during the pendency of the trust litigation, defendants made statements, in open court and in the presence of the public, concerning plaintiff's mental-health status, diagnoses, and treatment.

¶ 9    The complaint set forth five counts under which plaintiff sought relief, incorporating by reference the material set forth above. The first count set forth a claim under the Act as to all defendants. It alleged that defendants violated the Act by seeking and obtaining plaintiff's mental-health records even though she did not place her mental health at issue, seeking and obtaining such records without ensuring that the trial court had conducted an *in camera* review of them, seeking and obtaining such records without ensuring that the trial court had made the requisite findings under the Act after conducting an *in camera* review, seeking and obtaining such records without written notice to plaintiff and her mental-health treatment providers, seeking a court order requiring plaintiff to sign a written consent to the disclosure of such records, filing a motion to dismiss, "seeking to punish [p]laintiff for exercising her statutory privilege to refuse to disclose" such records, and issuing subpoenas that did not comply with the Act.

¶ 10   Count II alleged legal malpractice on the part of Williams McCarthy and Lindsey. It first alleged an attorney-client relationship between all defendants. It then claimed that plaintiff was a third-party beneficiary of the attorney-client relationship. Plaintiff based this claim on the fact that Lindsey drafted the HIPAA order purportedly for plaintiff's benefit. Thus, plaintiff reasons, Williams McCarthy and Lindsey owed her a duty of reasonable care. The actions taken by Williams McCarthy and Lindsey that led to the disclosure of certain mental-health records breached this duty.

¶ 11   Plaintiff's third count alleged negligent supervision on the part of Williams McCarthy. This count sought to hold Williams McCarthy liable for failing to prevent Lindsey from violating the HIPAA order and the Act. Plaintiff argued that Lindsey's repeated violations indicated his "particular unfitness for the position of attorney."

¶ 12   Count IV, pertaining to all defendants, alleged an invasion of plaintiff's privacy by the "public disclosure of private facts." It alleged as follows:

"The actions and inactions of the Defendants constituted a public disclosure of private facts as to the Plaintiff, in that public disclosure was made by Defendants placing Plaintiff's confidential medical health and mental health information within the court file, accessible to the public; and by Defendants creating and disseminating written and oral statements to other persons, including but not limited to statements made to Defendant SARVER, Dr. Anthony D'Souza, Karyn Martin-Boht, Dr. Thomas Dennison, and Attorney Bob Thompson, and statements made in open court, in courtrooms where members of the public, and attorneys, were gathered and had access to oral statements made by Defendants."

According to plaintiff, this constituted an invasion of privacy, a violation of the HIPAA order, and a violation of the Act.

¶ 13 The fifth count alleged intentional infliction of emotional distress. This count alleged that defendants' violations of the Act and the HIPAA order exhibited "wanton and utter indifference" to plaintiff's rights and constituted "extreme and outrageous conduct." Further, defendants knew or should have known that their actions would cause plaintiff emotional distress, which was also their intent.

¶ 14 Defendants moved to dismiss pursuant to section 2-619 of the Code. The trial court granted the motion. It first noted that the instant litigation arose out of the previous trust litigation, which was in front of a different trial judge, Judge Ackert. The trust litigation concerned claims that the settlor, Ruby Lance, lacked the capacity to execute a trust and that Sarver exerted undue influence over Lance, which caused plaintiff to be excluded from the trust. During that litigation, plaintiff alleged, defendants subpoenaed, obtained, and made part of the court file certain of plaintiff's medical and mental-health records. The issues presented in the motion to dismiss, the trial court noted, were whether counts I, IV, and V were barred by the absolute-litigation privilege and whether, with respect to counts II and III, any duty existed and extended to plaintiff. The trial court found that Williams McCarthy and Lindsey owed no duty to plaintiff, and it dismissed counts II and III on that basis. It expressly found that the HIPAA order was not drafted with the primary intent to benefit plaintiff; rather, Williams McCarthy and Lindsey simply intended to comply with the law.

¶ 15 As for the remaining counts, the trial court found that they were barred by the absolute-litigation privilege. It noted that the privilege applied to claims of intentional infliction of emotional distress and invasion of privacy. Although count I was based on the Act, it was in the nature of an invasion-of-privacy claim, so the privilege applied to it as well. The trial court further noted that plaintiff's mental-health records were relevant to the trust litigation. It observed that one of the issues was whether the reason plaintiff was left out of Lance's "will or trust" was her estrangement from Lance. Plaintiff's need for counseling was purportedly due, in part, to this estrangement, and the mental-health records would substantiate this. There was also an issue regarding whether, in assessing Lance's mental capacity, a doctor attributed some of plaintiff's history to Lance. Thus, plaintiff's records were relevant to cross-examining the doctor and assessing his opinion. Finally, the trial court noted that conduct in a previous case typically cannot form the basis of a cause of action in a new case.

¶ 16 Subsequently, plaintiff filed a motion to reconsider. The trial court denied the motion. This appeal followed.

III. ANALYSIS

On appeal, plaintiff limits her arguments to counts I, IV, and V, the counts dismissed pursuant to the absolute-litigation privilege. She makes no argument here that Williams McCarthy or Lindsey owed her a duty (thus, counts II and III will not be addressed any further). As this appeal comes to us following the grant of a motion to dismiss pursuant to section 2-619 of the Code, review is *de novo*. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 18. Moreover, a motion to dismiss under section 2-619 "admits the legal sufficiency of the complaint, admits all well-pleaded facts and all reasonable inferences therefrom, and asserts [that] an affirmative matter outside the complaint bars or defeats the cause of action." *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 31. Here, the affirmative matter relied on by defendants is the absolute-litigation privilege.

The absolute-litigation privilege immunizes certain statements and conduct by attorneys in the course of litigation. See, *e.g.*, *Medow v. Flavin*, 336 Ill. App. 3d 20, 32 (2002). Also, "[a] private litigant enjoys the same privilege concerning a proceeding to which he is a party." *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 15. The privilege is based on section 586 of the Restatement (Second) of Torts, which provides as follows:

> "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (1977).

The purpose of the privilege is to allow attorneys " 'the utmost freedom in their efforts to secure justice for their clients.' " *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 701-02 (2000) (quoting Restatement (Second) of Torts § 586 cmt. *a* at 247 (1977)). It further serves to facilitate the free flow of information between attorneys, clients, and the court system. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 24. Its application "is limited, however, to instances where the administration of justice and public service require immunity." *Id.* As an absolute privilege, the class of communications to which it applies is narrow. *Kurczaba*, 318 Ill. App. 3d at 701. For the privilege to apply, the communication must bear some relationship to the proposed or "pending litigation" and it must be in furtherance of that litigation. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 25. However, this latter requirement is not strictly applied, and all doubts are to be resolved in favor of finding the communication pertinent to the litigation. *Id.* Indeed, when the privilege applies, "no liability will attach even at the expense of uncompensated harm to the plaintiff." *Id.*

We will first examine counts IV and V—alleging common-law invasion of privacy and intentional infliction of emotional distress, respectively. In *Johnson*, 2014 IL App (1st) 122677, ¶¶ 14-18, the court found the privilege applicable to claims of "invasion of privacy, negligence, negligent infliction of emotional distress, and breach of oral and written contracts." See also *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 26 (holding privilege applies to action alleging intentional infliction of emotional distress). Hence, we have little difficulty concluding that the trial court correctly determined that the privilege applied to bar counts IV and V. These counts were based on acts done in the course of and in furtherance of the trust litigation. Plaintiff complained that defendants placed material in the court file and made statements in open court. Counts IV and V relied—generally—on the same acts. Seeking information from witnesses, issuing subpoenas, and seeking to obtain and enforce discovery

are intimately related to litigation. In short, the acts of which plaintiff complained were clearly pertinent to the trust litigation, so the privilege plainly applies. Recasting the same acts as different torts does not avoid this bar. See *Johnson*, 2014 IL App (1st) 122677, ¶¶ 17-18.

¶ 21    Plaintiff makes several arguments as to why the trial court erred in holding that the absolute-litigation privilege barred her claims. She sets forth three circumstances under which, she states, the privilege does not apply. The first is where the communication does not further some interest of social importance. See *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003). We agree; however, we note that representing a client's interests is of social importance. *Id.* at 167. As defendants' actions were in furtherance of Sarver's interests in the trust litigation, this circumstance does not apply here. Second, plaintiff states that, where a communication was made by an attorney to a person other than a client, the privilege does not apply. She cites *Kurczaba*, 318 Ill. App. 3d at 704-05, but that case actually holds, "From the above cases, it is evident that Illinois clearly limits the attorney litigation privilege and has refused to extend it to third-party communications *unrelated to a lawsuit*." (Emphasis added.) *Id.* at 705. Plaintiff omits the criterion that the communication be unrelated to the lawsuit, which is not the case here. Hence, *Kurczaba* is distinguishable on this basis. Third, she contends that, where there are no safeguards against abuse, like the ability to discipline an attorney or strike sensitive material from the record, the privilege does not apply. See *Stein v. Krislov*, 2013 IL App (1st) 113806, ¶ 35. Here, defendants' actions occurred in a judicial proceeding, so the trial court could have imposed sanctions. Further, the trial court did seal the records at issue. As such, this circumstance is not present here either.

¶ 22    Plaintiff next contends, quoting *Thompson v. Frank*, 313 Ill. App. 3d 661, 664 (2000), that the privilege does not apply to " 'an attorney's out-of-court communications to' persons other than the attorney's own client and opposing counsel." *Thompson* does, in fact, state, "In Illinois, the absolute privilege concerning communications related to a judicial proceeding has been extended to out-of-court communications between opposing counsel, between attorney and client related to pending litigation, and between attorneys representing different parties suing the same entities," but "Illinois courts have not extended the privilege to cover an attorney's out-of-court communications to other persons." *Id.* Plaintiff complains that information protected by the Act was disseminated to her mental-health treatment providers, unidentified persons present in the courtroom, unidentified members of the public, and attorneys not of record, persons present during depositions, and unidentified persons who (might have) viewed the court file.

¶ 23    In *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 29, the court held that the privilege applied to communications between an attorney and individuals remediating a condition (mold in a condominium) that was the subject of the pending legal action. It explained, "[the defendant-attorney's] alleged directions to the individuals remedying the condominium were not made to an outsider within the meaning of the privilege; rather, neither [the attorney] nor the workers would have had reason to be in [the plaintiff's] condominium but for the mold, the subject of this litigation." *Id.* In this case, almost all of the people upon whom plaintiff bases her claim bore a relationship to the litigation, whether it be courtroom personnel, participants in a deposition, or potential witnesses. To the extent that plaintiff seeks to rely on unidentified members of the general public who might have viewed the court proceedings or

the court file (and who might not have had some relationship to the litigation), her allegations are far too speculative to merit consideration. See *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 735 (2009).

¶ 24 Turning to count I, we perceive different concerns at issue. Plaintiff argues that the absolute-litigation privilege has never been applied to bar a proceeding under the Act. She further criticizes the trial court's attempt to analogize an action under the Act to an invasion-of-privacy claim. Defendants acknowledge that the privilege has not previously been applied in this context. Unlike with the common-law counts, here we must consider whether the privilege can thwart a legislative enactment. Indeed, the chief flaw with the trial court's analogy is that invasion of privacy is a common-law theory whereas an action based on the Act is statutory.

¶ 25 The Act itself plainly creates a private right of action. Section 15 of the Act states, "Any person aggrieved by a violation of this Act may sue for damages, an injunction, or other appropriate relief." 740 ILCS 110/15 (West 2016). Section 3(a) states that "[a]ll records and communications shall be confidential and shall not be disclosed except as provided in this Act." 740 ILCS 110/3(a) (West 2016). Furthermore, in accordance with section 10, the Act applies "in any civil, criminal, administrative, or legislative proceeding." 740 ILCS 110/10 (West 2016). Thus, the plain language of various provisions of the Act indicates that the legislature intended it to control all releases of the material it makes confidential in all types of proceedings and that a safeguard against improper disclosure is a civil action. It has been held that "the Act constitutes a 'strong statement' by the General Assembly about the importance of keeping mental health records confidential. [Citation.]" *Norskog v. Pfiel*, 197 Ill. 2d 60, 71 (2001). Conversely, the absolute-litigation privilege applies to a "narrow class of cases." *Bushell v. Caterpillar, Inc.*, 291 Ill. App. 3d 559, 561 (1997). Although defendants make a number of policy-based arguments as to why the privilege should be applied expansively, we view this issue more as one of legislative intent regarding the scope of the Act.

¶ 26 Thus, the question remains as to whether the statutory provisions must give way to the absolute-litigation privilege. We find sound guidance on this question in an analogous context, as this question has already been addressed in the context of the common-law privilege enjoyed by witnesses. In *Renzi v. Morrison*, 249 Ill. App. 3d 5, 6 (1993), the court considered whether common-law witness immunity foreclosed a lawsuit under the Act where a witness disclosed confidential material during a court proceeding. The *Renzi* court concluded that it did not. *Id.* at 8. The court observed that the "legislature recognized that the right to witness immunity must be balanced with the right to privileged communication between doctor and patient." *Id.* The legislature created a cause of action for "[a]ny person aggrieved by a violation of [the] Act." (Internal quotation marks omitted.) *Id.*; see also 740 ILCS 110/15 (West 2016). The court then noted that allowing the privilege to defeat such an action would make such language a nullity. *Renzi*, 249 Ill. App. 3d at 8; see also *Mandziara v. Canulli*, 299 Ill. App. 3d 593, 598 (1998) (approving of *Renzi* and noting that common law " 'must give way' " to the statutory protections of the Act).

¶ 27 *Renzi* concerned common-law witness immunity while this case concerns the absolute-litigation privilege. Nevertheless, we perceive no principled way to distinguish *Renzi* and its progeny. Whatever can be said about the interplay between the Act and common-law witness immunity can also be said in the instant context. Accordingly, we hold

- 7 -

that the absolute-litigation privilege provides no shield for a party charged with a violation of the Act.

¶ 28                              IV. CONCLUSION

¶ 29     In light of the foregoing, we reverse the trial court's dismissal of count I of plaintiff's complaint, and we otherwise affirm. This cause is remanded for further proceedings consistent with this opinion. Plaintiff raises additional issues regarding the trial court's application of the Act; however, as we read the trial court's decision, it was based only on the absolute-litigation privilege. We express no opinion on any issue beyond that.

¶ 30     Affirmed in part and reversed in part; cause remanded.