NOTICE

Decision filed 08/08/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210156-U

NO. 5-21-0156

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| EAGLE TRUST FUND and PHYLLIS SCHLAFLY REVOCABLE TRUST, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellants, | ) ) | |
| v. | ) ) | No. 20-L-1699 |
| ELIZABETH MILLER, SPENCER FANE, LLP., ERIK O. SOLVERUD, and ANNE SCHLAFLY CORI, | ) ) ) ) | Honorable Dennis R. Ruth, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court did not err in dismissing the claims against the defendant attorneys with prejudice based upon the attorney litigation privilege where the attorneys' communications and conduct were related to a judicial proceeding and were performed in furtherance of representation of their clients. The trial court did not err in dismissing the claims against the remaining defendants with prejudice where there were other lawsuits pending involving the same parties, the same causes, and the same core set of facts and where the plaintiffs failed to show that they could amend their complaint to cure the defects upon which the dismissal was based.

¶ 2     The plaintiffs, Eagle Trust Fund and Phyllis Schlafly Revocable Trust, filed an action against the defendants, Elizabeth Miller, Anne Schlafly Cori, Spencer Fane, LLP., and Erik O. Solverud, alleging that they engaged in a conspiracy to misappropriate proprietary information that was owned and controlled by the plaintiffs. The trial court dismissed the claims against

1

Spencer Fane, LLP. and Erik O. Solverud (collectively, Lawyer Defendants)[1] with prejudice, based upon the attorney litigation privilege. The court dismissed the claims against Miller and Cori, with prejudice, finding there were other pending lawsuits involving the same parties and overlapping causes of action based upon the same core set of facts. On appeal, the plaintiffs claim that the trial court erred in dismissing the claims against the Lawyer Defendants based upon the attorney litigation privilege where the alleged conduct did not pertain to the Lawyer Defendants' representation of their clients or a judicial proceeding. The plaintiffs further claim that the trial court abused its discretion in dismissing the claims against Miller and Cori with prejudice and without leave to amend. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4       During her lifetime, Phyllis Schlafly created several organizations and trust funds, including Eagle Forum, Eagle Forum Education and Legal Defense Fund (EFELDF), Eagle Trust Fund (ETF), and the Phyllis Schlafly Revocable Trust (PSRT). Phyllis Schlafly and her children served in leadership roles in one or more of these entities. Near the end of Schlafly's life, her children began to battle over the direction and control of entities that she established. This lawsuit involves one of those battles. It is intertwined with many other lawsuits—including one pending in the United States District Court for the Eastern District of Missouri and another pending in the circuit court of Madison County, Illinois. For context, pertinent history of the events leading up to this litigation follows.

¶ 5       Eagle Forum is a not-for-profit, tax-exempt organization[2] that was founded by Phyllis Schlafly to advance conservative causes. Schlafly served as the Chairman, Chief Executive Officer, and as a Director of Eagle Forum until her death on September 5, 2016. Her son, John

---

[1]The parties referred to Spencer Fane, LLP. and Erik O. Solverud as "Lawyer Defendants" in the trial court and on appeal. We retain this reference for consistency.
    [2]Eagle Forum is a section 501(c)(4) organization (26 U.S.C. § 501(c)(4) (2012)).

Schlafly, was the Treasurer and a Director of Eagle Forum, and her daughter, Anne Schlafly Cori, was a Director of the organization.

¶ 6    In the spring of 2016, discord developed within the Eagle Forum membership and a rift arose among its leaders. At that time, Anne Schlafly Cori, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry, were the Majority Directors of Eagle Forum (Majority Directors), and they were on one side of the divide. John Schlafly and Edward R. Martin,[3] then President of Eagle Forum, were on the other side.

¶ 7    On April 11, 2016, the Majority Directors, over John's objection, voted to remove Martin as President of Eagle Forum. Eunie Smith was appointed as acting president and Cori as the executive director. In the wake of these actions, divisions deepened over the governance and control of Eagle Forum, and litigation followed.

¶ 8                          A. Prior Litigation

¶ 9    On April 22, 2016, the Majority Directors filed an action against Martin, John, and Eagle Forum[4] in the circuit court of Madison County, Illinois (Initial Action). The Majority Directors alleged that Martin continued to hold himself out as President of Eagle Forum after he had been removed from office, and that Martin and John denied the Majority Directors access to the Eagle Forum headquarters, its financial accounts, contact lists, websites and related passwords, intellectual property, and other property. The Majority Directors sought an accounting of Eagle Forum properties, an order enjoining Martin and John from interfering with the Majority Directors' efforts to execute their duties to Eagle Forum, and a judgment declaring that the Eagle Forum Board meeting on April 11, 2016, and the actions taken by the Majority Directors during the meeting, were valid and lawful.

---

[3]For clarity, we will refer to Anne Schlafly Cori as "Cori," John F. Schlafly as "John," and Edward Martin as "Martin" throughout the remainder of this disposition.
    [4] Eagle Forum was sued as a nominal defendant.

¶ 10    On April 25, 2016, the Majority Directors filed a motion for a temporary restraining order against Martin and John. Following a hearing on April 29, 2016, the trial court granted the motion and issued a temporary restraining order. The court ordered Martin and John to give the Majority Directors access to the Eagle Forum headquarters and all Eagle Forum property.

¶ 11    On October 20, 2016, the trial court entered an amended temporary restraining order (Amended TRO), pursuant to an emergency motion filed by the Majority Directors. The court suspended John from the Eagle Forum Board of Directors, and enjoined Martin and John, and those acting in concert with them, from "using, accessing, controlling, transferring, copying, destroying or modifying any Eagle Forum Property," without prior written authorization of the plaintiffs. The court granted the Majority Directors temporary control and possession of all Eagle Forum property. The property included a list of 14,000 active Eagle Forum members, a contact list of 41,000 emails used by Eagle Forum for mass emailing, the eagleforum.org domain name and the Eagle Forum website. The court also authorized the Majority Directors of Eagle Forum to continue to transact business with ETF and EFELDF.

¶ 12    Meanwhile, on October 19, 2016, one day before the Amended TRO was entered in Madison County, PSRT, ETF, and EFELDF filed a lawsuit against Cori, the other Majority Directors, Jane or John Does 1-5, and Eagle Forum in the United States District Court for the Eastern District of Missouri (EDMO Action). The plaintiffs alleged that beginning in 2016, the defendants conspired to misappropriate and use the Schlafly database, the Eagle website, and intellectual property owned by Phyllis Schlafly to further their own political agenda instead of supporting Phyllis Schlafly's agenda. The complaint contained counts for trademark infringement, unfair competition, trademark dilution, and additional counts alleging violations of the Defend Trade Secrets Act (18 U.S.C. § 1836 (2012)), and the Missouri Uniform Trade

4

Secrets Act (Mo. Rev. Stat. § 417.450). On April 17, 2017, the plaintiffs filed an amended complaint, alleging that the defendants "covertly appropriated" a copy of the Schlafly database from a secure cloud backup, using the access credentials of Elizabeth Miller, an ETF employee. On November 15, 2017, the federal district court issued a temporary stay of the proceedings in the EDMO Action, finding that the parties, claims, and remedies in the EDMO Action were substantially similar to those in the Initial Action pending in Madison County.

¶ 13    While the proceedings in the EDMO Action were stayed, the parties continued with litigation in the Initial Action. Eagle Forum was realigned as a party plaintiff, and ETF and EFELDF were added as party defendants. On October 5, 2018, ETF and EFELDF filed a 29-count amended counterclaim against the Majority Directors and Eagle Forum. In the amended counterclaim, ETF and EFELDF alleged that beginning in 2016, the Majority Directors conspired to covertly misappropriate and use a portion or all of the Schlafly database to further their own personal and political agendas, instead of supporting the agenda of Phyllis Schlafly. According to allegations in the counterclaim, the Majority Directors directed Miller, then an employee of ETF, to transfer the Schlafly database to them, and that Miller's credentials were used to access and copy the Schlafly database on or about October 27, 2016. ETF and EFELDF alleged that the Majority Directors' unauthorized use of the Eagle Forum website, the Schlafly database, PhyllisSchlafly.com, and Phyllis Schlafly's name, image, and likeness, constituted copyright and trademark infringements and violated the federal Defend Trade Secrets Act (18 U.S.C. § 1836 (2012)). They further alleged that the Majority Directors aided and abetted Elizabeth Miller in breaching her fiduciary duties to ETF. ETF and EFELDF sought a judgment declaring that the Majority Directors and Eagle Forum had no legal right, title, or interest in the Schlafly Database, derivative mailing lists, donor lists, data subsets, EagleForum.org, or

PhyllisSchlafly.com. They also sought a permanent injunction preventing the Majority Directors and Eagle Forum from accessing, using, or disclosing the Schlafly database and other proprietary properties to third parties.

¶ 14    On October 31, 2019, the trial court dismissed 28 of the 29 counts in the amended counterclaim. The court found that the counterclaim and the complaint in the EDMO Action set forth "largely the same transactional facts" to support the claims for misappropriation of the Schlafly database, unauthorized use of trademarks, interference with online donations, dilution of trademarks, and interference with mail, and dismissed those claims to "avert multiplicity of litigation over similar issues." The court retained EFT's and EFELDF's claim for "aiding a breach of fiduciary duty," along with the Majority Directors' claims for an accounting of Eagle Forum properties and a declaratory judgment regarding the propriety of the Eagle Forum Board meeting on April 11, 2016, finding that those claims involved a somewhat different fact pattern than the matters in the EDMO Action.

¶ 15    On April 6, 2020, the plaintiffs, ETF, PSRT, and EDELDF, filed a motion to lift the temporary stay in the EDMO Action. The plaintiffs claimed that they recently discovered that Cori and the other defendants had employed a cyber-intelligence firm, called SpearTip, LLC (SpearTip), to assist in the collection of data from the Schlafly database in 2016, and that an immediate resumption of the litigation was necessary to prevent the defendants from continued misappropriation of proprietary information in that database. The stay was lifted on May 12, 2020.

¶ 16    On August 12, 2020, ETF and EDELDF filed a second amended complaint in the EDMO Action, adding SpearTip as a defendant. According to the second amended complaint, on or

about October 25, 2016, Elizabeth Miller[5] covertly downloaded the entire Schlafly database and other proprietary information onto USB drives from ETF's secure cloud, while employed by and without the permission of ETF. Then, at the direction of Cori and others, Miller delivered the USB drives to defendant SpearTip's offices in St. Louis, Missouri. ETF and EDELDF further alleged that Cori's attorney, Erik Solverud, had retained SpearTip to act as an expert and to provide "forensic imaging" services, and that SpearTip decrypted the information on the USB drives, converted it to a useable format, and delivered it to the individual defendants. Copies of SpearTip's Engagement Letter and a Chain of Custody Log were appended to the second amended complaint. ETF and EFELDF alleged that Miller's theft and SpearTip's decryption were done for improper purposes at the direction of the individual defendants and their counsel, and that these acts enabled the defendants to covertly misappropriate the entire Schlafly database of proprietary information. The plaintiffs further alleged that the defendants disrupted and eliminated ETF's ability to receive online donations and interfered with ETF's relationships with its donors.

¶ 17     On November 3, 2020, the federal district court dismissed the plaintiffs' claims against Cathie Adams, Shirley Curry, Rosina Kovar, Carolyn McLarty, and Eunie Smith, with prejudice. The court found that the plaintiffs lumped these defendants and the Jane or John Doe defendants into a group referred to as "Individual Defendants," and did not make a single factual allegation about any specific action taken by these "Individual Defendants." Subsequently, the plaintiffs voluntarily dismissed their claims against SpearTip. The claims against Cori and Eagle Forum remained pending in the EDMO Action.

---

[5]Although Elizabeth Miller was repeatedly referenced in the second amended complaint, she was not named as a defendant in the EDMO Action. Whether she was one of the Jane or John Doe defendants is unknown.

¶ 18                    B. The Subsequent Action in Madison County

¶ 19    On December 2, 2020, the plaintiffs, ETF and PSRT, filed an eight-count complaint against Miller, Cori, and the Lawyer Defendants in the circuit court of Madison County. The complaint set forth common allegations applicable to all counts. According to the complaint, the trial court in the Initial Action entered an Amended TRO on October 20, 2016, and thereby granted Cori and the other Majority Directors temporary sole control over all Eagle Forum property, including a portion of the Schlafly database, and other electronic and hard copy files of books and records of Eagle Forum. A few days after the Amended TRO was entered, Miller downloaded the encrypted Schlafly database and other proprietary materials onto removable hard drives, while employed by and without authorization from ETF. Miller, at the direction of Cori and the Lawyer Defendants, delivered the hard drives to a third party, SpearTip, LLC, to be decrypted. The plaintiffs alleged that the data obtained by Cori and Solverud exceeded the scope of the Eagle Forum property and proprietary materials granted in the Amended TRO. They further alleged that Attorney Solverud served as Cori's counsel at all times relevant, and that his wrongful conduct was done "explicitly in furtherance of" and for the benefit of "Defendant Solverud's representation of Defendant Cori."

¶ 20    The plaintiffs alleged that Miller, acting in concert with Cori and Attorney Solverud, conspired to appropriate and use the Schlafly database and other proprietary information for the benefit of Cori and Eagle Forum. ETF and PSRT brought counts asserting violations of the Illinois Trade Secret Act (count I), civil conspiracy (count II), conversion (count III), tortious interference with a prospective economic advantage (count IV), unjust enrichment (count V), breach of fiduciary duty (count VI), aiding and abetting a breach of fiduciary duty (count VII), and *respondeat superior* (count VIII). The plaintiffs sought compensatory and exemplary

damages, and an order enjoining Miller, Cori, and the Lawyer Defendants from continued use of the Schlafly database until any funds derived from the prior use were disclosed and placed in escrow.

¶ 21    On February 12, 2021, the Lawyer Defendants filed a combined motion to dismiss under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). In their motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)), the Lawyer Defendants asserted that the claims against them were protected under the absolute attorney litigation privilege. They argued that the complaint acknowledged that the alleged wrongdoing by the Lawyer Defendants was committed in connection with their efforts to comply with the Amended TRO and in furtherance of their representation of Cori in the Initial Action. They claimed that the litigation privilege applied to the plaintiffs' claims, and that under the privilege, the lawyer's motives, the lawyer's knowledge of wrongdoing, and even the unreasonableness of the lawyer's conduct was irrelevant. In the motion to dismiss under section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2020)), the Lawyer Defendants argued that the plaintiffs' claims were not timely filed within the two-year statute of limitations applicable to claims arising out of an act or omission of an attorney in the performance of professional services (735 ILCS 5/13-214.3(b) (West 2020)).

¶ 22    On February 12, 2021, Cori and Miller filed separate motions to dismiss the claims against them under section 2-619(a)(3) of the Code (735 ILCS 5/2-619(a)(3) (West 2020)). Each argued that the lawsuit involved the same factual allegations, the same causes of action, and the same parties as those in the EDMO Action. Each also argued that any request to amend should be denied because there were no allegations that could be added or amended to cure the deficiencies.

¶ 23    On March 23, 2021, ETF and EFELDF filed a response in opposition to the Lawyer Defendants' motion to dismiss. Initially, they argued that the litigation privilege did not protect the Lawyer Defendants' out-of-court communications with Miller and SpearTip, because neither was a client of the Lawyer Defendants, nor connected to the litigation. They also argued that Lawyer Defendants' communications and conduct were unrelated to any legal proceedings. In addition, the plaintiffs claimed that the attorney litigation privilege did not shield the Lawyer Defendants from liability for the alleged violations of the Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq.* (West 2020)).

¶ 24    In the response, ETF and EFELDF acknowledged that the Lawyer Defendants retained SpearTip to decrypt the Schlafly database. They attached SpearTip's Letter of Engagement, dated October 25, 2016, and SpearTip's chain of custody logs in support of their pleading. The engagement letter showed that the Lawyer Defendants had "retained SpearTip as a forensic computer expert on behalf of its clients, Anne Schlafly Cori and the additional directors of Eagle Forum." The chain of custody logs indicated that Elizabeth Miller provided two USB drives to SpearTip on October 25, 2016, and that SpearTip returned those drives to her later that same day. ETF and EFELDF claimed that the Lawyer Defendants had legal recourse to obtain the proprietary information as ordered by the court, but "chose to covertly steal" the property in direct contravention of the legal proceedings and the limits of the October 20, 2016, Amended TRO.

¶ 25    Lastly, ETF and EFELDF addressed the statute of limitations. They argued that their claims against the Lawyer Defendants were timely filed within the applicable two-year statute of limitations, and alternatively, that the limitation period was tolled under either the discovery rule or the fraudulent concealment statute (735 ILCS 5/13-215 (West 2020)).

10

¶ 26    On March 29, 2021, ETF and EFELDF filed their responses in opposition to the respective 2-619(a)(3) motions filed by Cori and Miller. ETF and EFELDF argued that the complaint before the court was premised upon different facts, causes of action, and defendants than those in the EDMO Action. More specifically, they argued that the pending case was based upon the defendants' collective actions in furtherance of their conspiracy, including the unauthorized taking of the plaintiffs' proprietary Schlafly database, while the EDMO Action was based on defendant Cori's and others' trademark infringement, unauthorized use of eagleforum.org and other websites, and interference with the plaintiffs' mail and donations. They also argued that even if there were other pending actions arising from the same set of operative facts, the overlapping of common facts should not result in the dismissal of the plaintiffs' complaint. The plaintiffs asserted that the trial court, in its discretion, could determine that both actions should proceed. The plaintiffs asked that the motions be denied. As alternative relief, the plaintiffs asked the court to dismiss the claims without prejudice, and allow them to amend their complaint. The plaintiffs did not identify or provide any proposed amendments.

¶ 27    On May 7, 2021, the trial court heard arguments on the respective motions to dismiss. In ruling from the bench, the court found that the attorney litigation privilege applied and dismissed all claims against the Lawyer Defendants with prejudice. The court did not rule on the statute-of-limitations issue. The court also dismissed the claims against Cori and Miller with prejudice, finding that the claims involved the same parties and same core set of facts and were duplicative of the claims pending in the EDMO Action and the claims remaining in the Initial Action in Madison County. The court issued written orders of dismissal that same day. This appeal followed.

11

¶ 28                                    II. ANALYSIS

¶ 29    On appeal, the plaintiffs initially claim that the trial court erred in dismissing their claims against the Lawyer Defendants based upon the attorney litigation privilege. They argue that the privilege does not apply where the out-of-court communications and conduct alleged did not pertain to the Lawyer Defendant's representation of their clients or any judicial proceedings. They also argue the litigation privilege is preempted by the Illinois Trade Secrets Act (ITSA) (765 ILCS 1065/1 *et seq.* (West 2020)).

¶ 30    In this case, the trial court granted the Lawyer Defendants' section 2-615 motion and dismissed the claims against them based upon the attorney litigation privilege. A motion to dismiss under 2-615 attacks the legal sufficiency of the complaint based upon defects apparent on the face of the complaint. 735 ILCS 5/2-615 (West 2020). In ruling on a section 2-615 motion, the court must accept all well-pleaded facts and any reasonable inferences drawn from those facts as true. *In re Estate of Powell*, 2014 IL 115997, ¶ 12. But the court will not accept as true mere conclusions unsupported by specific facts. *Estate of Powell*, 2014 IL 115997, ¶ 12. The court may also consider judicial admissions in the record and matters of judicial notice. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 18. A defendant may properly raise an affirmative defense in a section 2-615 motion if the defense is apparent from the face of the complaint and no other facts alleged in the complaint negate the defense. *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 292 (2010); *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 18. An order dismissing an action under section 2-615 is reviewed *de novo*. *K. Miller Construction*, 238 Ill. 2d at 292.

¶ 31    Illinois' attorney litigation privilege is generally based on section 586 of the Restatement (Second) of Torts (1977). *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 24. Section 586 of the Restatement (Second) of Torts provides:

> "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (1977).

¶ 32    The attorney litigation privilege provides an attorney with complete immunity with regard to communications and conduct in the course of litigation. *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶ 18. The privilege has been applied to attorney communications in a variety of situations, such as communications made before, during, and after litigation, out-of-court communications between an attorney and his client regarding pending litigation, and out-of-court communications between the parties' attorneys. *Scarpelli*, 2018 IL App (1st) 170874, ¶ 20. The privilege has been extended beyond communications to include conduct performed within the practice of law, since attorneys typically engage in both communication and actions to secure justice for their clients. See *Scarpelli*, 2018 IL App (1st) 170874, ¶¶ 25, 27; *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 27.

¶ 33    The privilege is intended to provide attorneys with the " 'utmost freedom in their efforts to secure justice for their clients.' " *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 701-02 (2000) (quoting Restatement (Second) of Torts § 586, cmt. a, at 247 (1977)). The privilege further facilitates the free flow of information between attorneys, clients, and the court system. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 24. In light of these policies, the attorney's motives

13

are irrelevant. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 25. That said, as an absolute privilege, its application is limited to instances where the administration of justice and public service require immunity. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 24.

¶ 34    For the privilege to apply, the communications and conduct must relate to the proposed or pending litigation, and they must be committed in furtherance of the representation. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 25. This pertinency requirement is not strictly applied and a court will resolve all doubts in favor of pertinency. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 25.

¶ 35    Before considering the propriety of the trial court's ruling on the attorney litigation privilege, we will address the plaintiff's contention that the Lawyer Defendants' motion to dismiss was based on an affirmative defense and more properly filed under section 2-619. As stated above, an affirmative defense can be raised in a 2-615 motion if the defense is apparent from the face of the complaint. When ruling on a 2-615 motion to dismiss, the court will consider the well-pleaded factual allegations and reasonable inferences drawn therefrom, along with judicial admissions and facts of which a court may take judicial notice. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 20. In this case, the court could take judicial notice of the Initial Action in Madison County, as the plaintiffs' complaint relies upon that proceeding. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 20. Because the absolute litigation privilege is apparent on the face of the complaint, the motion was properly filed under 2-615.

¶ 36    We next consider whether the attorney litigation privilege applied in this case. After reviewing the plaintiffs' complaint, we find that the allegations against the Lawyer Defendants pertained to their representation of Cori and others in the Initial Action in Madison County. In the complaint, the plaintiffs acknowledged that complained-of conduct was commenced after the

14

Madison County circuit court issued the Amended TRO, directing the Lawyer Defendants' clients to take temporary control of the Schlafly database, Eagle Forum's hard files, and other Eagle Forum records and accounts. The plaintiffs alleged that Cori and the Lawyer Defendants exceeded the directives and scope of the Amended TRO with respect to the amount of the data obtained and controlled. The plaintiffs expressly alleged that Attorney Solverud's actions were taken "explicitly in furtherance of Attorney Solverud's representation of Defendant Cori," and for "the benefit of Cori." Contrary to the plaintiffs' arguments, the allegations in the complaint establish that the Lawyer Defendants' conduct was related to then pending litigation and was committed in furtherance of the representation of their clients.

¶ 37     The plaintiffs also argue that the trial court erred in applying the attorney litigation privilege to the Lawyer Defendants' out-of-court communications with SpearTip and Miller. In its complaint, the plaintiffs alleged that Attorney Solverud retained SpearTip to perform decryption services on behalf of his clients, Cori and Eagle Forum.[6] Thus, SpearTip was not an outsider who had no connection to the litigation. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 29. Likewise, Miller was no stranger to the litigation. According to the complaint, Miller was employed by ETF, a defendant in the Initial Action, and she had unique access to the Schlafly database. It was further alleged that Miller's actions in downloading the Schlafly database occurred in response to the entry of the Amended TRO. Thus, the plaintiffs' complaint demonstrates that SpearTip and Miller each had some connection to the Initial Action. The trial

---

[6]In its response in opposition to the Lawyer Defendants' 2-615 motion to dismiss, the plaintiffs acknowledged that the Lawyer Defendants retained SpearTip as a forensic computer expert on behalf of their clients in the Initial Action, and attached the SpearTip engagement letter, thereby inviting the trial court to consider the document in ruling on the motion to dismiss. Under the rule of invited error, a party cannot complain of error that they procure, invite, acquiesce in, or induce the trial court to make. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004).

court did not err in finding that the attorney litigation privilege applied to the Lawyer Defendants' respective communications with SpearTip and Miller.

¶ 38    We next consider the plaintiffs' contention that the litigation privilege did not apply to the Lawyer Defendants' "illegal out-of-court conduct." Initially, we note that the plaintiffs have not made specific allegations that the Lawyer Defendants committed a crime. Rather, the plaintiffs' complaint contains one vague and conclusory assertion that the actions of Miller, Cori, and Solverud in procuring the Schlafly database "potentially amounts to felony theft." This court will not accept as true mere conclusions unsupported by specific facts. *Estate of Powell*, 2014 IL 115997, ¶ 14. Moreover, the attorney litigation privilege affords an attorney immunity for conduct made during litigation regardless of the attorney's motives or the unreasonableness of his conduct. See, for *e.g.*, *O'Callaghan*, 2015 IL App (1st) 142152, ¶¶ 25, 29-30 (where the plaintiffs alleged that opposing counsel ordered workers to remove mold-containing barriers, required their experts to alter their opinions, and concealed evidence, the litigation privilege applied because all of the alleged improper conduct clearly pertained to the role of the attorney in the underlying action and were done in furtherance of representing their client).

¶ 39    Finally, the plaintiffs contend that the attorney litigation privilege does not apply to its statutory claims under the Illinois Trade Secrets Act (ITSA) (765 ILCS 1065/1 *et seq.* (West 2020)). They rely upon *Doe v. Williams McCarthy, LLP*, 2017 IL App (2d) 160860, in support of their contention.

¶ 40    In *Doe*, the plaintiff brought an action alleging, in part, that his mental health records were disclosed by the defendant-attorneys in violation of the Mental Health and Developmental Disabilities Confidentiality Act (Act) (740 ILCS 110/10 (West 2016)). The trial court found that the claim was barred by the absolute litigation privilege. On appeal, our colleagues in the Second

16

District determined that the litigation privilege did not shield a lawyer charged with a violation of the Act. *Doe*, 2017 IL App (2d) 160860, ¶ 27. The court noted that section 10 of the Act provides that the confidentiality provisions apply in "any civil, criminal, administrative, or legislative proceeding." 740 ILCS 110/10 (West 2016); *Doe*, 2017 IL App (2d) 160860, ¶ 25. Conversely, the absolute litigation privilege applied to a narrow class of cases. *Doe*, 2017 IL App (2d) 160860, ¶ 25. The court found that the Act was intended to protect confidential mental health records, and that lawyers were not immune from a civil suit for damages when they violated the provisions of that law. *Doe*, 2017 IL App (2d) 160860, ¶¶ 26-27. The court concluded that the plain language of the provisions in the Act demonstrated the legislative intent to keep mental health records confidential and to safeguard against improper disclosure. *Doe*, 2017 IL App (2d) 160860, ¶ 25.

¶ 41 Here, the plaintiffs' reliance on *Doe* is misplaced. The plaintiffs have not shown that the same policy concerns and protections extend to trade secrets under the ITSA. Section 8 of the ITSA provides, "Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8(a) (West 2020). Subsection (b) provides that the ITSA does not affect contractual remedies, other civil remedies not based upon the misappropriation of a trade secret, criminal remedies, or the definition of a trade secret in any other Act of this State. 765 ILCS 1065/8(b) (West 2020). Thus, the ITSA provides remedies for a specific class of cases. The plaintiffs have not pointed to any provision in the Act, or any other authority, indicating that the legislature intended to eliminate otherwise relevant affirmative defenses to an alleged ITSA violation. They have failed to demonstrate that the attorney

17

litigation privilege is inapplicable to a claim alleging an ITSA violation. We, therefore, find that their argument is without merit.

¶ 42 The plaintiffs have invited us to consider the statute of limitations argument and find that their complaint against the Lawyer Defendants was timely filed. The trial court did not rule on this issue. Given that, and our finding that the trial court properly dismissed the claims against the Lawyer Defendants based upon the attorney litigation privilege, we need not address the arguments concerning the statute of limitations.

¶ 43 In their next point, the plaintiffs contend that the trial court abused its discretion in dismissing the claims against Miller and Cori with prejudice under section 2-619(a)(3) of the Code (735 ILCS 5/2-619(a)(3) (West 2020)). Section 2-619(a)(3) allows a defendant to seek the dismissal of an action where "there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2020). The purpose of this section is to avoid duplicative litigation. *Estate of Hoch v. Hoch*, 382 Ill. App. 3d 866, 869 (2008).

¶ 44 Under section 2-619(a)(3), the "same parties" requirement is satisfied "where the litigants' interests are sufficiently similar, even though the litigants differ in name or number." *Estate of Hock*, 382 Ill. App. 3d at 869; *Doutt v. Ford Motor Co.*, 276 Ill. App. 3d 785, 788 (1995). Actions involve the "same cause" when the requested relief is based upon substantially the same set of facts." *Estate of Hock*, 382 Ill. App. 3d at 869; *Doutt*, 276 Ill. App. 3d at 788. In determining whether two actions are for the same cause, "the crucial inquiry is whether both arise out of the same transaction or occurrence, not whether the legal theory, issues, burden of proof, or relief sought materially differs between the two actions." *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 337 (2005).

18

¶ 45    Whether a motion to dismiss under section 2-619(a)(3) should be granted is within the discretion of the trial court, and the court's decision will not be reversed absent an abuse of its discretion. *Doutt*, 276 Ill. App. 3d at 789. There are four factors that the trial court should consider in determining, in its discretion, whether a stay or dismissal is warranted: comity; the prevention of multiplicity, vexation, and harassment; the likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* effect of a foreign judgment in a local forum. *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 447-48 (1986). In addition, the court should weigh the prejudice that would result to the nonmovant if the motion is granted against the policy of avoiding duplicative litigation. *Doutt*, 276 Ill. App. 3d at 789.

¶ 46    Here, the trial court found that the action before it and the EDMO Action involved the same cause. We agree. Both actions arose from the same transaction or occurrence, *i.e.*, the defendants' alleged misappropriation of the Schlafly database and the alleged interference with donations. The trial court also found that the interests of the parties were sufficiently similar. In the EDMO Action, PSRT, ETF, and EFELDF are the named plaintiffs, and Eagle Forum and Cori remain as defendants. In the case at bar, PSRT and ETF are the named plaintiffs, and Cori and Miller remain as defendants. In both cases, the plaintiffs are interested in obtaining injunctive relief and damages for the alleged misappropriation, and the defendants are seeking to defend against these allegations. Although Miller is not a defendant in the EDMO Action, she is an object of the litigation, and her interests are sufficiently aligned with the interests of Cori and Eagle Forum.

¶ 47    The report of proceedings shows that the trial court considered relevant *Kellerman* factors, commenting on comity, judicial economy, and the multiplicity of actions, in determining whether to grant the section 2-619(a)(3) motion to dismiss. *Kellerman*, 112 Ill. 2d at 447-48. The

19

court compared the causes of action in this case and the EDMO Action, and noted that the federal court had lifted its stay and allowed that case to proceed with discovery. The court considered the "proliferation" of litigation around the same basic set of operative facts. The court described this "proliferation" as a running from judge to judge and court to court to try to get a better decision. The court also recognized that the Initial Action remained pending in Madison County. The record indicates that the court carefully considered the circumstances and exercised its discretion to avoid duplicitous litigation. After reviewing the record, we do not find that the court abused its discretion in dismissing the claims against Cori and Miller under section 2-619(a)(3).

¶ 48    The plaintiffs next argue that the trial court should have considered staying the proceedings to provide them the opportunity to consolidate the related claims into one action. A review of the record demonstrates that the plaintiffs did not seek a stay of the proceedings in the trial court. It is well settled that matters not presented to or ruled upon by the trial court may not be raised for the first time on appeal. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 229 (1986). Thus, this issue is forfeited.

¶ 49    In their final argument, the plaintiffs contend that the trial court abused its discretion in dismissing their action without granting them leave to amend the complaint. In determining whether to permit a party to amend their pleadings, a court considers whether (a) the proposed amendment would cure a defective pleading, (b) the proposed amendment would surprise or prejudice the opposing party, (c) the proposed amendment was timely filed, and (d) the moving party has had previous opportunities to amend. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). Whether to grant or deny a motion to amend a complaint is within the discretion of the trial court, and a reviewing court will not overturn that decision absent an

20

abuse of discretion. *Loyola Academy*, 146 Ill. 2d at 273-74. Here, the plaintiffs did not present a proposed amendment to their complaint in the trial court. They have not shown that they could provide additional allegations or amended allegations that would have cured the defect upon which the complaint was dismissed, *i.e.*, same parties, same cause. After reviewing the record, we conclude that the trial court did not abuse its discretion in dismissing the claims against Cori and Miller with prejudice and without leave to amend.

¶ 50                                        III. CONCLUSION

¶ 51     In sum, the trial court properly dismissed the plaintiffs' claims against the Lawyer Defendants based upon the attorney litigation privilege. In addition, the trial court did not abuse its discretion in dismissing the plaintiffs' claims against Cori and Miller with prejudice under section under section 2-619(a)(3). Accordingly, the judgment of the circuit court is affirmed.

¶ 52     Affirmed.