2025 IL App (1st) 240419-U

SIXTH DIVISION
March 7, 2025

No. 1-24-0419

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| STEVE FANADY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County |
| | ) | |
| JERRY ISRAELOV a/k/a JEROME | ) | No. 2023 L 006667 |
| ISRAELOV, SEAN HAMANN, MICHAEL | ) | |
| DIDOMENICO, THE LAW FIRM OF LAKE | ) | |
| TOBACK DIDOMENICO, PAUL BARGIEL, | ) | The Honorable |
| and PAMELA HARNACK, | ) | Maureen O. Hannon, |
| | ) | Judge Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The judgment of the circuit court is affirmed. Plaintiff's claims against defendants are barred by the absolute litigation privilege.

¶ 2                                I. BACKGROUND

¶ 3    Steve Fanady and Jerry Israelov are former business partners. In 2010, they purchased a seat together at the Chicago Board of Options Exchange (CBOE). After the CBOE was converted

to a public corporation, it issued 80,000 shares of stock to Fanady and Israelov in exchange for their seat. When a dispute developed between the two over the distribution of the CBOE shares, Israelov filed suit against Fanady.

¶ 4 Meanwhile, Fanady and his then wife, Pamela Harnack, divorced in August of 2011. To enforce the judgment of dissolution, Harnack initiated post-decree proceedings against Fanady that involved Harnack's entitlement to some of Fanady's CBOE shares. Because Harnack's post-decree divorce case and Israelov's suit against Fanady concerned their entitlement to the CBOE shares held by Fanady, the two cases were consolidated in 2011. Israelov's suit against Fanady was ultimately resolved in 2017, but Harnack's post-decree case against Fanady continued.

¶ 5 In 2019, Sean Hamann and Michael DiDomenico from the law firm of Lake Toback DiDomenico and Paul Bargiel began representing Harnack in the post-decree divorce case. During these proceedings, the court held Fanady in indirect civil contempt after he refused to turn his CBOE shares over to Harnack or to pay her their fair market value. He was jailed on the contempt charge on June 28, 2022.

¶ 6 On July 5, 2023, Fanady filed a complaint against Israelov and Harnack. In addition, he sued attorneys Hamann, DiDomenico, the law firm of Lake Toback DiDomenico, and Bargiel (collectively, Harnack's attorneys). He brought claims against Israelov for stalking, violation of the hate crimes statute, and intentional and negligent infliction of emotional distress. He alleged that on at least ten occasions since December 2019, Israelov appeared in court in his post-decree divorce proceedings. He alleged that Israelov also filed *pro se* appearances and attended Fanady's discovery deposition virtually over his objection in order to "inflict[] emotional stress and trauma" on him. Fanady also brought claims against Harnack's attorneys for aiding and abetting, intentional and negligent infliction of emotional distress, and civil conspiracy. He alleged that Harnack's

attorneys aided and abetted Israelov in stalking and harassing Fanady by allowing Israelov to attend court appearances, assisting with him with *pro se* appearances, and permitting him to be present during Fanady's deposition in the post-decree divorce case. Fanady asserted that these actions by Harnack's attorneys were "part of legal strategy" to "achieve their goals" in the post-decree divorce case. Fanady also brought a claim against Harnack, alleging that she was accountable for the actions of her attorneys who were acting as her agents.

¶ 7    Harnack's attorneys moved to dismiss the claims against them under 735 ILCS 5/2-619, arguing that because all of the conduct alleged by Fanady concerned actions taken by them during the course of their representation of Harnack in the post-decree divorce proceedings, Fanady's claims were barred by Illinois' absolute litigation privilege. They alternatively argued that Fanady's claims against them should be dismissed under section 2-615 of the Civil Practice Law because the allegations in his complaint were insufficient to support the claims asserted.

¶ 8    Harnack also moved to dismiss the claim against her under sections 2-619 and 2-615 of the Civil Practice Law. She argued that because Fanady's claim against her was premised on the merit of the claims against her attorneys, if their motion to dismiss was granted, the sole count against her must also be dismissed. She alternatively argued that the claim against her should be dismissed under section 2-615, because Fanady's complaint was "entirely devoid of any factual allegations whatsoever as to whether [she] directed, controlled, authorized, or ratified her divorce attorneys' allegedly tortious conduct," and therefore it failed as a matter of law.

¶ 9    On February 5, 2024, the court granted Harnack's and her attorneys' motions to dismiss under section 2-619 and dismissed all counts against them with prejudice. Fanady's claims against Israelov remained pending, so the court issued a Supreme Court Rule 304(a) finding on Feb 13, 2024. Fanady timely appealed the court's order.

¶ 10                                    II. ANALYSIS

¶ 11    Fanady argues that the trial court erred when it dismissed Harnack's and her attorneys' motions to dismiss under section 2-619 of the Civil Practice Law. He argues that the absolute litigation privilege does not apply to the actions of the Harnack's attorneys and that Harnack should be held accountable for the acts of her attorneys because "it can be logically inferred" that she knew what they were doing.

¶ 12                              A. Standard of Review

¶ 13    A motion to dismiss under 735 ILCS 5/2-619 "admits the legal sufficiency of the complaint, admits all well-pleaded facts and all reasonable inferences therefrom, and asserts an affirmative matter outside the complaint bars or defeats the cause of action." *Reynolds v. Jimmy John's Enterprises, LLC,* 2013 IL App (4th) 120139, ¶ 31. Here, the affirmative matter asserted is the absolute attorney litigation privilege. We review *de novo* a trial court's ruling to dismiss a complaint pursuant to the absolute litigation privilege. *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 14.

¶ 14                     B. Fanady's Claims Against Harnack's Attorneys

¶ 15    The absolute attorney litigation privilege provides an attorney with "complete immunity with respect to the communications he makes" as long as the communications "pertain to proposed or pending litigation*." Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶¶ 18-19. This privilege is based on section 586 of the Restatement (Second) of Torts, which states:

> "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."

Restatement (Second) of Torts § 586 (1977).

The privilege is intended to allow attorneys "the utmost freedom in their efforts to secure justice for their clients." *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 701-02 (2000) (quoting Restatement (Second) of Torts § 586, comment *a* (1977)). Although the restatement expressly refers to defamation, Illinois courts have extended the litigation privilege well beyond defamation claims because "[t]he absolute privilege would be meaningless if a recasting of the cause of action *** could void its effect." *Johnson,* 2014 IL App (1st) 122677, ¶¶ 16-18 (quoting *Barker v. Huang*, 610 A.2d 1341, 1349 (Del. 1992) (applying the litigation privilege to negligent infliction of emotional distress, invasion of privacy, breach of contract and negligence claims); see also *Kim v. State Farm Mutual Automobile Insurance Co.*, 2021 IL App (1st) 200135, ¶ 38 (barring claims related to allegedly fraudulent statements made in the course of an underlying personal injury suit based on the litigation privilege); *Bedin v. Northwestern Memorial Hospital*, 2021 IL App (1st) 190723, ¶ 41 (holding that the absolute litigation privilege applied to bar an intentional infliction of emotional distress claim).

¶ 16    The privilege has also been "extended beyond communications to include conduct performed within the practice of law" because "attorneys typically do things—actions—in addition to communications in order to secure justice for their clients." *Scarpelli,* 2018 IL App (1st) 170874, ¶ 25. If courts were to "[l]imit[] the privilege to communications, as opposed to conduct, [it] would undermine the policies behind the privilege." *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 27.

¶ 17    This litigation privilege affords an attorney complete immunity regardless of his motives and irrespective of the unreasonableness of his conduct. *Scarpelli,* 2018 IL App (1st) 170874, ¶ 18; *Golden v. Mullen*, 295 Ill. App. 3d 865, 870 (1997). "The only requirement for the application

of the attorney litigation privilege is that the communication must pertain to proposed or pending litigation." *Scarpelli*, 2018 IL App (1st) 170874, ¶ 19. This rule is not strictly applied, and any doubts about the application of the privilege must be resolved in favor of a finding of pertinency. *Id.*; *Popp v. O'Neill*, 313 Ill. App. 3d 638, 642 (2000).

¶ 18    Here, Fanady bases his claims against Harnack's attorneys on the following alleged conduct: (1) allowing Israelov to be virtually present during Fanady's deposition; (2) providing Israelov with information about court dates; (3) helping Israelov file a *pro se* appearance in the post-decree divorce case; and (4) arguing against Fanady's motion to strike Israelov's appearance at a court hearing. He argues that the absolute litigation privilege does not apply to these actions for three reasons, which we address in turn.

¶ 19    First, Fanady argues that the litigation privilege does not apply because Harnack's attorneys were "aiding and facilitating the crimes of felony stalking and a felony hate crime" by helping Israelov attend court hearings, allowing him to attend Fanady's deposition virtually, and helping him file his *pro se* appearance in the divorce proceedings. But the only claims Fanady brings against Harnack's attorneys are civil ones and Israelov was never charged with or convicted of any crimes. His attempt to reframe this civil tort case as a criminal one in an effort to avoid the application of the litigation privilege is unavailing.

¶ 20    Second, Fanady argues that because he is suing Harnack's attorneys "for their actions which aided, abetted, promoted and facilitated Israelov" in his alleged stalking and hate crimes and not for what they are "saying, arguing, or what they are putting in their pleadings in connection with their representation of their client," the litigation privilege is somehow inapplicable. As noted above, however, the absolute litigation privilege "extend[s] beyond communications to include conduct performed within the practice of law," and the "only requirement" for the privilege to

apply is that the communication or conduct "must pertain to proposed or pending litigation." *Scarpelli*, 2018 IL App (1st) 170874, ¶ 19. Because Fanady concedes that all of the actions taken by Harnack's attorneys were "part of their legal strategy to gain an advantage in litigation" in Harnack's post-decree divorce case against him, their actions fall squarely within the protections of the litigation privilege.

¶ 21    Fanady relies on *Doe v. McCarthy*, LLP, 2017 IL App (2d) 160860, for support, where plaintiff alleged that defendant attorneys violated the Illinois Mental Health and Developmental Disabilities Confidentiality Act (Act) when they disclosed information about plaintiff's mental health status and treatment without her consent. *Id.* ¶ 4. Plaintiff also brought invasion of privacy and intentional infliction of emotional distress claims against the defendants. *Id*. ¶¶ 10-13. Defendants moved to dismiss all three counts under section 2-619 of the Code and the trial court granted their motion, finding that plaintiff's claims were barred by the absolute litigation privilege. *Id*. ¶¶ 14-15. On appeal, this court found that the trial court "correctly determined that the privilege applied" to the invasion of privacy and intentional infliction of emotional distress counts because they were "based on acts done in the course of and in furtherance of the trust litigation." *Id*. ¶ 20. The court determined, however, that the litigation privilege did not apply to bar plaintiff's claim that defendants violated the Act when they disclosed information about her mental health because the privilege could "provide no shield for a party charged with a violation of the Act." *Id.* ¶ 27. The court reasoned that because "[t]he legislature created a cause of action for any person 'aggrieved by a violation of [the] Act' *** allowing the privilege to defeat such an action would make such language a nullity." *Id*. ¶ 26.

¶ 22    *Doe* is critically distinguishable, because, although Fanady alleges Israelov violated a statute, he does not allege that Harnack's attorneys violated any statute or that a statute confers on

him a cause of action against them. Although the Hate Crimes statute (720 ILCS 5/12-7.1) (eff. May 13, 2022) creates a cause of action against individuals who violate the statute, it does not do so for individuals who are alleged to aid and abet these violators. Accordingly, the court's rationale for refusing to apply the litigation privilege in *Doe* is inapplicable here.

¶ 23    Fanady's reliance on an unpublished case, *Eagle Trust Fund v. Miller*, 2022 IL App (5th) 210156-U, is equally misplaced. In *Eagle Trust Fund,* the trial court found that plaintiffs' claims against defendant attorneys were barred by the absolute litigation privilege. *Id.* ¶ 30. This court agreed, noting that plaintiffs expressly alleged in their complaint that the attorney's actions were taken "in furtherance of" and for 'the benefit of" his client, and therefore the absolute litigation privilege applied because "the allegations in the complaint establish that the Lawyer Defendants' conduct was related to then pending litigation and was committed in furtherance of the representation of their clients." *Id*. ¶¶ 36-37. Although plaintiffs argued that the absolute litigation privilege did not apply to their statutory claims under the Illinois Trade Secrets Act (ITSA), this court disagreed, finding that plaintiffs "failed to demonstrate that the attorney litigation privilege is inapplicable to a claim alleging an ITSA violation." *Id*. ¶¶ 39, 41. The court noted that plaintiffs had not "pointed to any provision in the [statute], or any other authority, indicating that the legislature intended to eliminate otherwise relevant affirmative defenses to an alleged ITSA violation" *Id*. ¶ 41.

¶ 24    Third, Fanady relies on the rules of professional conduct as well as a comment by the trial judge where she questioned why Israelov was permitted to virtually attend Fanady's deposition to argue that it is "clear that the Attorneys Defendants actions were well outside what should be tolerated." But as the trial court acknowledged, attorneys enjoy "broad immunity" to do what they think best during the course of litigation, and the litigation privilege applies regardless of their

motives or the unreasonableness of their conduct. *Scarpelli,* 2018 IL App (1st) 170874, ¶ 18. Moreover, this court has repeatedly rejected arguments similar to the one Fanady now makes. See, *e.g.*, *Doe,* 2017 IL App (2d) 160860, ¶ 21 (rejecting plaintiff's argument that the litigation privilege does not apply "where there are no safeguards against abuse, like the ability to discipline an attorney," reasoning that "defendants' actions occurred in a judicial proceeding, so the trial court could have imposed sanctions" based on attorney misconduct); *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 31 (rejecting plaintiffs' argument that "finding the privilege applies in circumstances [where there is attorney misconduct] *** leaves litigants without recourse and permits attorney misconduct to go unchecked," reasoning that "where misconduct has occurred in a given proceeding, an injured party may generally seek recourse in that particular proceeding").

¶ 25    Here, all of the actions by Harnack's attorneys upon which Fanady bases his claims took place during the course of their representation of Harnack in her post-decree divorce proceedings. Therefore, the trial court correctly concluded that Fanady's claims against Harnack's attorneys are barred by the absolute litigation privilege. See, *e.g., Goodman v. Goodman*, 2023 IL App (2d) 220086, ¶¶ 26-31(finding that the absolute litigation privilege precluded petitioner's claims for intentional infliction of emotional distress related to surveillance of her that was done "in the course of, and in furtherance of, anticipated and pending divorce proceedings"); *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 29 (finding that the plaintiff's claims were barred by the absolute litigation privilege because the defendants' actions "clearly pertained to the[ir] role *** as attorneys in the underlying action and were done in furtherance of representing their clients"); *Bedin*, 2021 IL App (1st) 190723, ¶ 46 (holding that the absolute litigation applied to bar plaintiff's intentional infliction of emotional distress claim because "defendant's statements were made in

contemplation of filing and during the pending guardianship action and were related and pertinent to that proceeding").

¶ 26                              C. Fanady's Claim Against Harnack

¶ 27    Fanady admits in his brief that it "makes no sense" to proceed with his claim against Harnack unless the claims against Harnack's attorneys are reinstated. Because the trial court properly dismissed the claims against Harnack's attorneys, it properly dismissed the sole count against Harnack as well.

¶ 28                              III. CONCLUSION

¶ 29    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 30    Affirmed.